KENNETH MAURICE WILSON *v.* STATE OF
MARYLAND

[No. 120, September Term, 1978.]

*Decided March 30, 1979.*

*Thomas J. Saunders, Assistant Public Defender,* with whom were *Alan H. Murrell, Public Defender,* and *George E. Burns, Jr., Assistant Public Defender,* on the brief, for appellant.

*Kathleen M. Sweeney, Assistant Attorney General,* with whom was *Stephen H. Sachs, Attorney General,* on the brief, for appellee.

ORTH, J., delivered the opinion of the Court.

Kenneth Maurice Wilson is presently incarcerated by reason of convictions of criminal offenses attained at two trials in the Criminal Court of Baltimore, Baylor, J., presiding. At the first trial he was found guilty by the court sitting without a jury of the rape and robbery of Lula Mae Vicks. He was sentenced to life imprisonment for the rape and to a concurrent ten year sentence for the robbery. At the second

trial he was found guilty by a jury of the carnal knowledge of Joann Murcer and of perverted practices upon her. He was sentenced to two years for the carnal knowledge and to ten years for the perverted practices, to run consecutively to each other but concurrently with the sentences previously imposed. He noted a direct appeal in each case to the Court of Special Appeals. He was not represented before that court by his trial counsel but by an assigned public defender. The two appeals were briefed and argued together. It was contended as to the Vicks case that the trial court erred in not suppressing a judicial identification of Wilson and in admitting evidence of a prior conviction of him and that the evidence was not legally sufficient to sustain the verdicts. With respect to the Murcer case, it was claimed that the trial court erred in admitting in evidence a statement given by him to the police, in denying his motion for a judgment of acquittal on the perverted practices offense, and in refusing to permit the police physician to testify as to the history taken from the victim. The Court of Special Appeals affirmed the judgments in two unreported opinions of the September, 1975 Term, each captioned *Wilson v. State,* the Vicks case being No. 763, decided 5 August 1976 and the Murcer case being No. 762, decided 6 August 1976. We denied Wilson's petition for certiorari in each case, 278 Md. 739 (1976).

While the direct appeals were pending, Wilson filed a petition in the Criminal Court of Baltimore seeking relief under post conviction procedures, Md. Rule BK40, but his motion to withdraw the petition without prejudice was granted by the court. After the appeals were decided by the Court of Special Appeals, Wilson renewed his collateral attack on the judgments by filing another petition under the Uniform Post Conviction Procedure Act. The petition, as supplemented, presented as grounds for reversal eleven errors alleged to have been made in his trials. After a plenary hearing, the post conviction court (Murphy, James W., J.) found that nine of them afforded no basis for relief. The two remaining allegations were that the trial judge had been prejudiced and that there had been a denial of a speedy trial.

The post conviction judge pointed out in his memorandum

opinion that at the hearing "Wilson stressed the fact that the same Judge had presided at both trials and that he had instructed his counsel on appeal to include this in his points raised on appeal. He also contended that despite his specific request, appeal counsel did not raise the issue of denial of a speedy trial in his appeal." Appellate counsel appeared and testified at the hearing. The post conviction judge noted that counsel

> agreed that [Wilson] had discussed with him the lack of speedy trial and prejudice of the trial Judge. Counsel stated that he advised [Wilson] that the speedy trial issue had not been raised at either trial and that he could not go outside of the transcript in preparing his appeal. As to the Judge's prejudice, counsel felt that although raised at the second trial, it had been abandoned by [Wilson].

The post conviction judge found "[i]n particular," and, we think, with ample justification, "that appellate counsel's testimony . . . indicated a lack of familiarity with the trial transcripts." [1] The transcripts of the two trials belied counsel's statement that "the speedy trial issue was not raised on the records." The judge determined that the transcript in each case reflected "that a Motion to Dismiss for Lack of Speedy Trial was filed by [Wilson] in proper person, argued by counsel and denied by the trial Judge." With respect to the alleged prejudice of the trial judge, appellate counsel first testified that the issue of the judge's disqualification was not raised at the second trial. "However, he then stated that this Motion [for disqualification] was properly before the trial Judge but that [Wilson] had 'dropped' this objection." Again, the transcript of the second trial was to the contrary. The post conviction judge

---

1. The post conviction judge said in commenting on the representation afforded Wilson on appeal:

> Counsel's records reflected two and one-half hours spent on appeal. Included in this total was one hour of consultation with Petitioner. At his only visit to him, Petitioner had submitted a number of issues to him, but counsel had rejected them because he felt they were without any basis.

ascertained that it showed that Wilson "orally moved for the trial Judge to disqualify himself. This Motion was denied by the Court." The post conviction judge concluded that "[b]ased on the record and the Post Conviction testimony, . . . [Wilson] was not afforded genuine representation in regard to his direct appeal." He therefore granted Wilson a belated appeal to be filed within thirty days of the date of the order.

Apparently the State did not feel aggrieved by the order granting the belated appeal; it did not apply to the Court of Special Appeals for leave to prosecute an appeal therefrom as authorized by Code (1957, 1976 Repl. Vol., 1978 Cum. Supp.) art. 27, § 645-I. Wilson duly filed the belated appeal awarded him. Represented by the Public Defender and an Assistant Public Defender, he presented five questions for review, including the issues of prejudice of the trial judge and speedy trial. In its brief, the State answered the questions on the merits, noting, however, that two of the questions had been previously answered by the intermediate appellate court in its earlier opinions. Wilson's reply brief went only to the State's argument regarding speedy trial.

The Court of Special Appeals dismissed the appeal *sua sponte. Wilson v. State,* 39 Md. App. 113, 383 A. 2d 77 (1978). The crux of its decision was that "[t]he legislative grant of jurisdictional authority to hear post conviction complaints did not coincidentally vest the trial court with the power, not formerly conferred, to examine appellate operations." At 118. We granted Wilson's petition for a writ of certiorari. It presented these questions for review:

> 1. Does a criminal defendant have a constitutional right to the effective assistance of counsel on direct appeal of his conviction?
>
> 2. Assuming that a defendant has such a right, does the Maryland Post Conviction Procedure Act, Article 27, Section 645A, confer upon a trial court the authority to grant a belated appeal based upon a finding of ineffective assistance of counsel on direct appeal? If so, is that authority jurisdictional?

(1)

The State concedes, with good reason, that in a criminal case, any defendant who has the right of direct appeal is entitled to the effective assistance of counsel to prosecute that appeal. In this jurisdiction, by legislative enactment, a defendant, upon compliance with certain procedural requirements, *see* Md. Rules, ch. 1000, ordinarily has the absolute right to appeal to the Court of Special Appeals from a final judgment entered in a criminal case by a circuit court. Md. Code (1974) § 12-301 and (1978 Cum. Supp.) § 12-308 of the Courts and Judicial Proceedings article. For exceptions thereto *see* §§ 12-302 and 12-307. The people of Maryland declared in 1776 "[t]hat in all criminal prosecutions, every man hath a right ... to be allowed counsel ...." Md. Const., Declaration of Rights, art. 21. This constitutional provision was construed as intending to do no more than abolish the common law rules which denied representation, in whole or in part, by counsel in criminal cases. *Betts v. Brady,* 316 U. S. 455, 466, 62 S. Ct. 1252 (1942); *Raymond v. State,* 192 Md. 602, 607, 65 A. 2d 285 (1949).[2] Certainly, in this State, the practice has consistently been, not only at trial on the merits, but also on direct appeal, for the accused to be permitted to be represented by counsel even when there was no obligation on the State to provide counsel for an indigent defendant.

*Griffin v. Illinois,* 351 U. S. 12, 76 S. Ct. 585 (1956) held that a state may not grant appellate review in such a way as to discriminate against some convicted defendants on account of their poverty. In *Gideon v. Wainwright,* 372 U. S. 335, 83 S. Ct. 792 (1963), as we have indicated, note 2, *supra,* the requirement of the Sixth Amendment to the Constitution of the United States that "the accused shall enjoy the right ... to have the Assistance of Counsel for his defence" was made obligatory on the States by the Fourteenth Amendment, the

---

2. In Raymond v. State, 192 Md. 602, 607, 65 A. 2d 285 (1949), we said, consistent with Betts v. Brady, 316 U. S. 455, 466, 62 S. Ct. 1252 (1942), that the constitutional provision was "not aimed to compel the State to provide counsel for the accused." Fourteen years later, in Gideon v. Wainwright, 372 U. S. 335, 83 S. Ct. 792 (1963), the right to counsel provision of the Sixth Amendment to the federal constitution was made applicable to the states by the Fourteenth Amendment.

Court holding that "in our adversary system of criminal justice, any person haled into court, who is too poor to hire a lawyer, cannot be assured a fair trial unless counsel is provided for him." At 344. *Douglas v. California,* 372 U. S. 353, 83 S. Ct. 814 (1963), dealing with the first appeal, granted as a matter of right to rich and poor alike, from a criminal conviction, foreclosed the denial to an indigent of the assistance of counsel. There is an unconstitutional discrimination

> between cases where the rich man can require the court to listen to argument of counsel before deciding on the merits, but a poor man cannot. There is lacking that equality demanded by the Fourteenth Amendment where the rich man, who appeals as of right, enjoys the benefit of counsel's examination into the record, research of the law, and marshalling of arguments on his behalf, while the indigent, already burdened by a preliminary determination that his case is without merit, is forced to shift for himself. The indigent, where the record is unclear or the errors are hidden, has only the right to a meaningless ritual, while the rich man has a meaningful appeal. [*Id.* at 357-358.]

*See Anders v. California,* 386 U. S. 738, 741-742, 87 S. Ct. 1396 (1967).

If there had been any doubt as to entitlement to appellate representation, it was dispelled by the legislative scheme providing for the Office of the Public Defender. "Every court has power, if it deems proper, to appoint counsel where that course seems to be required in the interest of fairness." *Betts v. Brady, supra,* 316 U.S. at 471-472. In 1971, however, the General Assembly declared it to be the policy of this State

> to provide for the realization of the constitutional guarantees of counsel in the representation of indigents, including related necessary services and facilities, in criminal and juvenile proceedings within the State, and to assure effective assistance and continuity of counsel to indigent accused taken into

custody and indigent defendants in criminal and juvenile proceedings before the courts of the State of Maryland .... [Acts 1971, ch. 209, § 1.]

The Office of Public Defender was established in the executive branch of the government. Code (1957, 1976 Repl. Vol.) art. 27A, § 3. Among the duties of the Public Defender was to provide legal representation to indigent defendants in criminal proceedings "where the defendant is charged with a serious crime, before ... the Court of Special Appeals." [3] Code (1957, 1976 Repl. Vol., 1978 Cum. Supp.) art. 27A, § 4 (b) (2). Unconstitutional discrimination does not travel a one-way street. It is clear from the rationale of the Supreme Court decisions that an accused with the means to hire counsel to represent him on appeal could not be denied such representation in light of the statutory provisions granting legal assistance to an indigent accused.

Entitlement to assistance of counsel would be hollow indeed unless the assistance were required to be effective. It follows that a criminal defendant has the right to the effective assistance of counsel on the direct appeal of the judgment entered upon his conviction of a serious crime.

(2)

In *Kelly v. Warden,* 243 Md. 717, 222 A. 2d 835 (1966), we stated flatly that the Uniform Post Conviction Procedure Act was "not a substitute for an appeal or a means of obtaining a belated appeal." At 718. *Accord, Fisher v. Warden,* 225 Md. 642, 643, 171 A. 2d 731 (1961); *Banks v. Warden,* 220 Md. 652, 654, 151 A. 2d 897 (1959); *Carter v. Warden,* 219 Md. 692, 693, 150 A. 2d 242 (1959). It was early established that the Act was procedural only and did not create new substantive rights not given before its passage by habeas corpus, coram nobis or other writs available at common law. *State v. McCray,* 267 Md. 111, 132-133, 297 A. 2d 265 (1972); *Jordan v. State,* 221 Md. 134, 140, 156 A. 2d 453 (1959); *State v. D'Onofrio,* 221 Md.

---

3. For the definition of "serious crime," *see* Code (1957, 1976 Repl. Vol.) art. 27A, § 2 (h). The offenses of which Wilson was convicted were within the definition.

20, 28-29, 155 A. 2d 643 (1959). We had indicated that habeas corpus was never designed to review the regularity of judicial proceedings, as an alternative to appeal, but we recognized that there were exceptions to that general rule. *Hamilton v. Warden,* 214 Md. 633, 636, 136 A. 2d 251 (1957). It was meet, therefore, that there be exceptions to the general rule that a post conviction proceeding may not serve merely as an appeal, *Cheeseboro v. Warden,* 224 Md. 660, 661, 168 A. 2d 181 (1961), and was not designed to review the regularity of judicial proceedings as an alternative to appeal, *Warrington v. Warden,* 222 Md. 601, 604, 159 A. 2d 360 (1960). *Kelly v. Warden,* 243 Md. at 718, cited *Montgomery v. Director,* 235 Md. 672, 202 A. 2d 758 (1964), and *Montgomery* explained that the Act was "not a means of obtaining a belated appeal *when the applicant made no showing that he was denied a right to appeal or to seek leave to appeal or that he had made any effort to do so within the time allowed by law.*" 235 Md. at 673 (emphasis added). In *Wampler v. Warden,* 231 Md. 639, 191 A. 2d 594 (1963), in agreeing with the hearing judge that a belated appeal was properly denied, we carefully pointed out that "[t]he applicant was aware of his right of appeal, knew that his trial counsel was not going to exercise it for him, and knew that he could exercise it himself; and, what is perhaps still more important, there [was] no showing that the State misled him in any way or interfered in any way with his exercising his right of appeal." At 651-652. It seemed that there was no absolute that a belated appeal was completely beyond the ken of the Uniform Post Conviction Procedure Act. In certain circumstances, therefore, the lower courts have granted belated appeals under post conviction procedures, and the appellate courts have entertained them.

"The instances in which belated appeals in criminal cases usually have been allowed are those in which a timely direct appeal was attempted, but thwarted by the action of State officials." *Sewell v. Warden,* 235 Md. 615, 618, 200 A. 2d 648 (1964) and cases therein cited. But it is particularly significant in the frame of reference of the case now before us that the first belated appeal granted under post conviction procedures

was not of that mold. In *State v. Shoemaker,* 225 Md. 639, 171 A. 2d 468 (1961) our predecessors denied an application for leave to appeal by the State from an order of the Circuit Court for Prince George's County (Digges, J., now an associate judge of this Court) directing that the accused be granted a delayed appeal from the judgment entered on his conviction of rape. Notice of appeal had been filed by an attorney at the instance of the wife of the accused, but the attorney had done nothing further to perfect it, apparently because a retainer fee requested of the wife had not been paid. The appeal was dismissed by the Court of Appeals. Judge Digges conducted a plenary hearing and ordered "that the record in the case be prepared at the expense of the State and sent to the Court of Appeals for review of the judgment, and that the court-appointed counsel who represented the prisoner at his post conviction hearing be appointed as his attorney to represent him in the appeal." At 641. The State took the position that the accused had waived any right he may have had to appeal. This Court thought that the comprehensive findings of fact Judge Digges made on the evidence adduced before him left no basis for the sustaining of the State's position. At 642. It declared:

> Although the State had no part in preventing his appeal, we think that under the circumstances Judge Digges did not err in ordering that the case be forwarded to this Court for review. [*Id.* at 642.]

The *Shoemaker* exception to the general rule with respect to delayed or belated appeals has been recognized both by this Court and the Court of Special Appeals, although there has been no further occasion for them to apply it. *See Sewell v. Warden, supra,* at 618; *State v. Brown,* 235 Md. 401, 407, 201 A. 2d 852 (1964), *cert. denied,* 379 U. S. 978 (1965); *State v. Cox,* 10 Md. App. 211, 214, 269 A. 2d 106 (1970); *McCoy v. Warden,* 1 Md. App. 108, 121, 227 A. 2d 375 (1967); *Schaedler v. Warden,* 1 Md. App. 25, 29, 226 A. 2d 684 (1967). In *Carder v. Warden,* 3 Md. App. 309, 310, 239 A. 2d 143, *cert. denied,* 393 U. S. 943 (1968), the Circuit Court for Howard County, as quoted by the Court of Special Appeals, reached a decision partly "[i]n view of the decision of the Court of Appeals in

a somewhat analogous case," designating *Shoemaker,* but in the posture of the case before the intermediate appellate court, it was not necessary for that court to consider the impact of *Shoemaker.*

In dismissing the appeal in the instant case the Court of Special Appeals thought that the actual issue for decision was the jurisdiction of the trial court to grant the appeal and the jurisdiction of the appellate court to entertain it. *Wilson,* 39 Md. App. at 114. It raised the jurisdictional questions *sua sponte* and resolved them:

> We hold that the Uniform Post Conviction Procedure Act did not provide the Criminal Court of Baltimore with the jurisdiction to review appellate counsel's conduct or the issues raised or waived on appeal once that original appeal had been entered. We further hold that [the Court of Special Appeals] has no jurisdiction to hear a second appeal arriving here from the route thus traveled. [*Id.* at 116.]

Inherent in the ruling of this Court in *State v. Shoemaker, supra,* is that the post conviction court had the authority to grant a belated appeal in the circumstances and that the appellate court had the authority to entertain the appeal granted. In fact, the Court of Appeals in nowise indicated that it did not have jurisdiction to determine the delayed appeal put before it at the instance of the circuit court. In a comprehensive opinion it resolved the questions raised in the appeal on the merits (Hammond, J., dissenting on other than jurisdictional grounds) and reversed the judgment entered on the rape conviction. *Shoemaker v. State,* 228 Md. 462, 180 A. 2d 682 (1962).

Unless the premises basic to the decision in *State v. Shoemaker,* namely that the circuit court had the power to grant a delayed appeal and the appellate court had the power to hear it, are wrong, the circumstances of that case are sufficiently analogous to the case at hand to compel a finding that the Court of Special Appeals erred in dismissing the appeal. In each case a timely direct appeal had been noted but full review had been thwarted by an act of omission on the

part of the accused's appellate counsel, and in each the grant of a belated appeal was under post conviction procedures, predicated on factual findings by the hearing judge which were fully supported by the record made at a plenary hearing. We think that the basic premises of *State v. Shoemaker* were correct. We adhere to them.

The Uniform Post Conviction Procedure Act recognizes that when a criminal judgment is collaterally attacked under it, adequate procedures exist at the trial level, as distinguished from the appellate level, for taking testimony, receiving evidence, and making factual findings thereon concerning the allegations of error. *See* Md. Rule BK44 d and f. A hearing upon a first petition filed under the Act is mandatory, and the petitioner is entitled to representation by counsel thereat. Md. Rule BK44 a and b; *O'Connor v. Director,* 238 Md. 1, 2-3, 207 A. 2d 615 (1965). The hearing court must make a ruling on each allegation of error advanced and state the reasons for its action taken thereon. Md. Rule BK45 b; *Bauerlien v. Warden,* 236 Md. 346, 349, 203 A. 2d 880 (1964). *See Fennell v. Warden,* 236 Md. 423, 425, 204 A. 2d 75 (1964); *Duff v. Warden,* 234 Md. 646, 648, 200 A. 2d 78 (1964). This is all in satisfaction of the aim of the Act to bring together and consolidate in one simple statute all the remedies, beyond those that are incident to the usual procedures of trial and review, which are presently available for challenging the validity of a sentence. *State v. Zimmerman,* 261 Md. 11, 23-24, 273 A. 2d 156 (1971); *Brady v. State,* 222 Md. 442, 447, 160 A. 2d 912 (1960); *State v. D'Onofrio, supra,* at 29.[4]

Among the powers bestowed upon a person eligible to institute a post conviction proceeding is to seek to set aside his sentence upon claim that it was in violation of the federal

4. Thus it was, that Acts 1958, ch. 45, a companion act to the Post Conviction Procedure Act, repealed, in substantial measure, the statute concerning the writ of habeas corpus in order to be consistent with the Post Conviction Procedure Act, intending to stop endless repetitious collateral attacks on convictions, and to curtail the excessive volume of petitions for writs of habeas corpus which cluttered the courts. Tillett v. Warden, 220 Md. 677, 679, 154 A. 2d 808 (1959). *See* the preamble to ch. 45, Acts 1958; Legislative Council of Maryland, Report to the General Assembly of 1958, p. iv and pp. 107-110 (1957).

constitution or the constitution or laws of Maryland. Code (1957, 1976 Repl. Vol.) art. 27, § 645A (a); *State v. McCray,* 267 Md. 111, 132-133, 297 A. 2d 265 (1972). Such claims are proper unless they have been finally litigated, § 645A (b), or waived, § 645A (c). *See* § 645A (d); *Curtis v. State,* 284 Md. 132, 395 A. 2d 464 (1978). In light of the legislative scheme apparent in the Uniform Post Conviction Procedure Act, we believe that it contemplates that an accused be granted a belated appeal as a remedy to obtain full appellate review of his allegations of error, constitutional in scope, and neither finally litigated nor waived, when he has been denied his entitled appellate review of his claims due to improper action of his appellate counsel. *Cf. State v. Brown,* 235 Md. at 407. In our opinion, in such circumstances the basic contention does not constitute errors going to the appellate stage of criminal proceedings as indicated by the Court of Special Appeals, and which it found were not within the ambit of the Act, *Wilson,* 39 Md. App. at 116, but rather are errors relating to the validity of the original judgment, which that court recognized as properly cognizable under the Act, *id.* We think that such view is not contrary to the repugnance against piecemeal appeals and is consistent with the rationale of post conviction procedures. In short, under the facts found by the hearing judge, we think that the Act entitles the petitioner to a belated appeal as a remedy to insure that the accused obtain as full a review as if his appeal had been properly pursued.

As we have indicated, the Court of Special Appeals opined that the post conviction court had no jurisdiction to review appellate counsel's conduct once the original appeal had been entered. *Wilson,* 39 Md. App. at 117. It bolstered this view with a statement in *Stacy v. Burke,* 259 Md. 390, 401, 269 A. 2d 837 (1970), as quoted in *State v. McCray,* 267 Md. at 145:

> [T]he law is well settled that ordinarily, the trial court's jurisdiction is ended upon the filing of an appeal to this Court.

It added a quotation from *Bullock v. Director,* 231 Md. 629, 633, 190 A. 2d 789 (1963) expressing the rule in other words:

> After the appeal has been perfected, this Court is vested with the *exclusive* power and jurisdiction over the subject matter of the proceedings . . . . [Wilson at 117-118.]

It concluded:

> We therefore hold that the Criminal Court of Baltimore was divested of jurisdiction when the original appeals were entered. It follows that the issues raised, the conduct of counsel and, indeed, all elements and related events addressed (or neglected) during the appeal were beyond the jurisdiction of the trial court. [*Id.* at 118 (footnote omitted).] [5]

We first note that the petition for post conviction relief which was filed by Wilson while the direct appeals were pending was withdrawn without prejudice by order of the court upon his motion. The second petition, which was the one under which the belated appeal was granted, was filed after the appeals had been decided by the Court of Special Appeals. In any event, however, the rule relied upon by the Court of Special Appeals to support its holding clearly does not apply to post conviction proceedings. From its initial enactment, the Act expressly provided: "A petition for relief under this subtitle may be filed at any time." This was qualified by Acts 1970, ch. 595, by adding "except that where an appeal has been taken from the judgment of conviction to the Court of Appeals or Court of Special Appeals, it shall not be necessary to appoint counsel or conduct a hearing or take any action whatsoever on the petition, until the judgment of conviction

---

5. The Court of Special Appeals noted that it had, "of course, permitted trial courts to direct a belated appeal when counsel have wrongfully failed in their responsibility *to enter* an appeal from the trial court on a defendant's behalf, contrary to his expressed desires." Wilson v. State, 39 Md. App. 113, 117, 383 A. 2d 77 (1978). It explained: "At that juncture, prior to the entry of an appeal, the trial court still has jurisdiction over the case . . . ." *Id.* It added: "[H]owever, we have not extended — nor could we extend — the jurisdiction of the nisi prius court by permitting it to review our appellate proceedings after it was divested of jurisdiction by the entry of an appeal." *Id.*

becomes final in the court to which the appeal was taken."
Code (1957, 1976 Repl. Vol.) art. 27, § 645A (e).[6] The Court
of Special Appeals has correctly held that the exception

> simply gives the lower court the option, when a
> direct appeal is pending, to dispose of the petition
> under appropriate post conviction procedures, or to
> postpone all action thereon until the judgment of
> conviction becomes final as stated. If the lower court
> chooses to dispose of the petition before such
> determination of the direct appeal, it does not obviate
> the necessity of conducting a hearing at which the
> petitioner is entitled to the assistance of counsel if
> such hearing and representation would otherwise be
> required. [*Vernon v. Warden,* 11 Md. App. 340, 342,
> 274 A. 2d 405 (1971).]

The Court of Special Appeals ended its opinion in the
instant case with the declaration:

> Neither the statutes nor the rules permit a second
> appeal for either picking up issues overlooked or
> rehashing after an adverse decision. [39 Md. App. at
> 119.]

It is quite apparent that what the post conviction court did
was to grant Wilson the right to have only two issues
reviewed on direct appeal, namely whether his two trials were
had in violation of the constitutional guarantee of a speedy
trial and whether there was such prejudice on the part of the
judge presiding at the second trial (the Murcer case) as to
require reversal of the judgment therein entered. The right
granted was clearly not "a second appeal." The issues
involved had never been considered on appeal and were not
being "rehashed" at the appellate level. Nor had they been
"overlooked" by Wilson either at trial or on appeal. The post
conviction court accurately found that they had been raised

---

6. Acts 1976, ch. 472, § 6, consistent with the change in jurisdiction of the
Court of Appeals and Court of Special Appeals, eliminated "Court of
Appeals" in the provision and substituted "Court of Special Appeals" for "the
court to which the appeal was taken."

and decided at trial and preserved for appeal, and that the reason they were not presented on appeal was due to appellate counsel's mistaken belief, which could have been easily rectified by an adequate perusal of the record, that they had not been tried, decided and preserved below.[7]

We hold that, in the circumstances, the post conviction court had the power under the Uniform Post Conviction Procedure Act to grant Wilson the right to an appeal to the Court of Special Appeals on the issues of speedy trial as to both trials and lack of a fair trial predicated upon alleged prejudice of the judge presiding at the second trial held before a jury. We, therefore, reverse the judgment of the Court of Special Appeals dismissing the appeal and remand the case to that court with direction that it determine the two issues on their merits.[8]

> *Judgment of the Court of Special Appeals reversed; case remanded to that court for further proceedings in accordance with this opinion; costs to be paid by the Mayor and City Council of Baltimore.*

---

7. In the posture of this case, no question arises as to what obligation there may be on the part of a defendant's appellate counsel to present on appeal contentions at the direction of the accused, if in counsel's considered opinion they are without merit in substance or procedurally. Here, there was no indication that had Wilson's first appellate counsel been aware, as he should have been, that the issues were properly preserved at trial, he would not have presented them on the appeal. Thus, we expressly do not address the question, nor do we now attempt to construe Anders v. California, 386 U. S. 738, 87 S. Ct. 1396 (1967) with respect to it.

8. The Court of Special Appeals spelled out the appalling consequences it believed would result if it held that the action of the post conviction court was proper. Wilson v. State, 39 Md. App. 113, 118, 383 A. 2d 77 (1978). We observe that in the eighteen years since our decision in State v. Shoemaker, 225 Md. 639, 171 A. 2d 468 (1961), the fears of the Court of Special Appeals have not come to pass.