**Douglas Alan FRASCH, Petitioner-Appellant,**

v.

**James PEGUESE, Warden; J. Joseph Curran, Jr., The Attorney General of the State of Maryland, Respondents-Appellees.**

**No. 04–6902.**

United States Court of Appeals, Fourth Circuit.

Argued Feb. 4, 2005.

Decided July 7, 2005.

**ARGUED:** David Warren Lease, Smith, Lease & Goldstein, L.L.C., Rockville, Maryland, for Appellant. Mary Ann Rapp Ince, Assistant Attorney General, Office of the Attorney General of Maryland, Baltimore, Maryland, for Appellees. **ON BRIEF:** J. Joseph Curran, Jr., Attorney General of Maryland, Baltimore, Maryland, for Appellees.

Before NIEMEYER and MICHAEL, Circuit Judges, and SAMUEL G. WILSON, United States District Judge for the Western District of Virginia, sitting by designation.

Reversed and remanded by published opinion. Judge MICHAEL wrote the majority opinion, in which Judge WILSON concurred. Judge NIEMEYER wrote a dissenting opinion.

MICHAEL, Circuit Judge.

. This is an appeal from the dismissal of a federal habeas corpus petition as untimely under a limitations provision in the Anti–Terrorism and Effective Death Penalty Act (AEDPA), 28 U.S.C. § 2244(d)(1)(A), which requires that a petition be filed within one year of the conclusion of direct review or the expiration of the time for seeking direct review. The petitioner here (a Maryland prisoner) obtained, in a collateral proceeding, an order allowing him to file a belated application for leave to appeal his conviction and sentence. The con-

trolling issue in this case is whether the state appellate court's consideration and denial of his appeal application in a subsequent proceeding was direct review. We conclude that it was. As a result, the statute of limitations began to run when the time expired for seeking further direct review (through a writ of certiorari) from the United States Supreme Court. Because the federal petition was filed within one year of the expiration of the time for seeking direct review, it is not barred by AEDPA's statute of limitations. Accordingly, we reverse and remand.

## I.

In October 1989 Douglas A. Frasch pled guilty to first degree sexual assault in the Circuit Court for Charles County, Maryland (the Maryland Circuit Court). On December 14, 1989, he was sentenced to life in prison. His lawyer failed to file an application for leave to appeal, which would have been the route for seeking direct review of the conviction and sentence. On December 13, 1999, almost ten years after he was sentenced, Frasch filed a petition for postconviction review under the Maryland Uniform Postconviction Procedure Act (the UPCA), Md.Code Ann., Crim. Proc. 7–101 *et seq.*, in the Maryland Circuit Court. Frasch asserted, among other grounds, that he had received ineffective assistance of counsel because his lawyer failed to file an application for leave to appeal his conviction and sentence to the Court of Special Appeals of Maryland. (Frasch's time for filing an application for leave to appeal had expired thirty days after he was sentenced.) The state's attorney conceded that Frasch's Sixth Amendment rights had been violated because Frasch had not been informed of his right to file an application for leave to appeal by either his lawyer or the sentencing court. As a result, on October 3, 2000, the Maryland Circuit Court entered an order granting Frasch the right to file, within thirty days, a belated application for leave to appeal. The court's order did not address other issues raised by Frasch in his petition, but the order was entered without prejudice to his ability to file an additional petition on the unaddressed issues. On October 30, 2000, Frasch filed his application for leave to appeal his conviction and sentence in the Court of Special Appeals of Maryland. That court "read[,] considered, [and] denied" his application on July 9, 2001. J.A. 50. Because Frasch's application for leave to appeal was denied, he was not entitled to file a petition for a writ of certiorari in the Court of Appeals of Maryland. *See* Md. Code Ann., Cts. & Jud. Proc. § 12–202(4). On September 6, 2001, Frasch filed a second petition for postconviction review under the UPCA in the Maryland Circuit Court. In this petition Frasch reasserted the issues from his first petition that had not been addressed in the October 2000 order allowing him to file a belated application for leave to appeal. After his second petition was denied by the Maryland Circuit Court, the Court of Special Appeals denied his application for leave to appeal on December 10, 2002, thereby ending his state postconviction review.

█ Frasch came to federal court on August 22, 2003, when he filed a petition for a writ of habeas corpus in the District of Maryland. The State of Maryland moved to dismiss the petition on the grounds that it was not filed within the one-year statute of limitations prescribed by AEDPA. *See* 28 U.S.C. § 2244(d)(1)(A). Specifically, Maryland argued that Frasch's conviction became final on January 15, 1990, when the statutory deadline for filing an application for leave to appeal expired. Because his conviction became final prior to April 24, 1996, AEDPA's effective date, Maryland argued

that the statute of limitations for filing a federal habeas petition expired one year later, on April 24, 1997. The district court agreed with the state and dismissed Frasch's petition. Frasch now appeals and we review de novo the district court's application of 2244(d)(1)(A). *See Crawley v. Catoe*, 257 F.3d 395, 397–98 (4th Cir.2001).

## II.

### A.

AEDPA provides that "[a] 1–year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court." 28 U.S.C. § 2244(d). This one-year period begins running "from the latest of" several potential starting dates. *See id.* 2244(d)(1)(A)-(D). For our purposes, the relevant starting date is "the date on which the [state] judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." *Id.* § 2244(d)(1)(A). Simply put, "the one-year limitation period begins running when direct review of the state conviction is completed or when the time for seeking direct review has expired." *Hill v. Braxton*, 277 F.3d 701, 704 (4th Cir. 2002). As we will explain, Frasch's federal habeas petition was timely under a straightforward application of § 2244(d)(1)(A).

A Maryland defendant like Frasch who pleads guilty is not entitled to an appeal as a matter of right. Such a defendant may, however, seek direct review of his conviction and sentence by filing, within thirty days of judgment, an application for leave to appeal to the Court of Special Appeals of Maryland. *See* Md.Code. Ann., Cts. & Jud. Proc. § 12–302(e); Md. R. 8–204(b)(1); *McElroy v. State*, 329 Md. 136, 617 A.2d 1068, 1073 (1993) (characterizing a defendant's application for leave to appeal after a guilty plea as "direct review"). If the Court of Special Appeals denies the defendant leave to appeal, he is not permitted to seek review in the Court of Appeals, Maryland's highest court. *See* Md.Code. Ann., Cts. & Jud. Proc. § 12–202(4). The defendant's only option for seeking further direct review is to petition, within the allowed time of ninety days, for a writ of certiorari from the United States Supreme Court. *See* 28 U.S.C. § 1257 ("Final judgments or decrees rendered by the highest court of a State in which a decision could be had, may be reviewed by the Supreme Court by writ of certiorari . . . ."); Sup.Ct. R. 13(1). In the event the defendant does not file a petition for a writ of certiorari, "the time for seeking [direct] review" expires on the ninetieth day after the Court of Special Appeals denies the application for leave to appeal. *See* 28 U.S.C. § 2244(d)(1)(A); *Harris v. Hutchinson*, 209 F.3d 325, 328 n. 1 (4th Cir.2000). This is the day (or date) when the statute of limitations for filing a federal habeas petition begins to run.

On October 3, 2000, the Maryland Circuit Court granted Frasch a new thirty-day deadline for filing an application for leave to appeal his conviction and sentence to the Maryland Court of Special Appeals. Frasch filed a timely application for leave to appeal on October 30, 2000, and the Court of Special Appeals completed its direct review of his conviction and sentence on July 9, 2001, when it issued a decision stating that it had "read[,] considered, [and] denied" his application. J.A. 50. Frasch did not file a petition for a writ of certiorari with the United States Supreme Court, and thus his time for seeking further direct review expired ninety days later on October 8, 2001. Because Frasch was seeking state collateral review on October 8, 2001, AEDPA's one-year statute of limitations was tolled until De-

cember 10, 2002, the date on which state collateral review ended. *See* 28 U.S.C. 2244(d)(2) (providing that the statute of limitations is tolled while a defendant pursues state collateral review). Thus, his federal habeas petition was timely when it was filed on August 22, 2003.

### B.

To get around this straightforward application of 2244(d)(1)(A), Maryland focuses on the fact that Frasch did not file his application for leave to appeal within the original deadline prescribed by state rule, that is, he did not file it within thirty days of sentence (or judgment). *See* Md. R. 8–204(b)(1). Frasch failed to meet this deadline because neither his lawyer nor the sentencing court informed him of his appeal rights. Nearly ten years passed, and Frasch initiated a collateral proceeding to obtain the right to file his application beyond the original deadline. Maryland claims that because Frasch gained the right to file a belated application through a collateral proceeding, the Court of Special Appeals's consideration of his application constituted collateral, not direct, review. Because there has been no direct review in Frasch's case, according to Maryland, his time for seeking direct review expired for purposes of § 2244(d)(1)(A) when the original deadline for filing an application for leave to appeal expired on January 15, 1990. Thus, Maryland says that Frasch's time for filing a federal habeas petition expired on April 24, 1997, at the end of AEDPA's one-year grace period. We disagree.

■ To determine what constitutes "direct review" for purposes of 2244(d)(1)(A), we look to state (Maryland) law. *See Bridges v. Johnson,* 284 F.3d 1201, 1202 (11th Cir.2002). The Maryland Court of Special Appeals's consideration of a defendant's timely application for leave to

appeal constitutes direct review. *See McElroy,* 617 A.2d at 1073. Yet Maryland asserts that the court's consideration of Frasch's application was not direct review. Maryland argues that because Frasch used a collateral review proceeding to obtain the right to file his application for leave to appeal under a new deadline, the proceeding remained collateral when he filed and pursued the actual application. Maryland's argument appears to be based on *Salinas v. Dretke,* 354 F.3d 425, 431 (5th Cir.2004), an opinion in which the Fifth Circuit held that a state court's consideration of a belated appeal did not constitute direct review because the defendant had obtained the right to file the appeal through state habeas (collateral) proceedings. We reject the *Salinas* approach because it ignores that two separate proceedings are involved. Here, the nature of the review conducted by the Maryland courts was different in each proceeding, and the nature of the review is the key to determining whether it was collateral or direct. *See Orange v. Calbone,* 318 F.3d 1167, 1171 (10th Cir.2003) (concluding that "direct review" occurred when Oklahoma state prisoner was granted a belated appeal in which he was required to follow the procedural rules for a direct appeal, and the state appellate court "review[ed] the issues raised ... on the merits without the typical res judicata/procedural bar analysis normally employed in a case involving post-conviction review").

To obtain the right to file a belated application for leave to appeal, Frasch initiated a collateral proceeding under state law. *See* Md.Code Ann., Crim. Proc. 7–102(a). It is undisputed that the Maryland Circuit Court's consideration of Frasch's request to file an application outside of the statutory deadline constituted collateral review because the proceeding was initi-

ated under, and subject to the restrictions of, the UPCA. Under the UPCA a petitioner may assert only four types of claims: that "(1) the sentence or judgment was imposed in violation of the Constitution of the United States or the Constitution or laws of the State; (2) the court lacked jurisdiction to impose the sentence; (3) the sentence exceeds the maximum allowed by law; or (4) the sentence is otherwise subject to collateral attack on a ground of alleged error that would otherwise be available under a writ of habeas corpus, writ of coram nobis, or other common law or statutory remedy." *Id.* § 7–102(a)(1)– (4). In sum, a claim under the UPCA "does not constitute a part of the original criminal cause, but is an independent and collateral civil inquiry into the validity of the conviction and sentence." *Md. State Bar Ass'n v. Kerr,* 272 Md. 687, 326 A.2d 180, 181 (1974); *see also Mosley v. State,* 378 Md. 548, 836 A.2d 678, 685 (2003) (noting that collateral review under the UPCA "is not an appeal of the judgment[ but] rather[ ] . . . is a collateral attack .designed to address alleged constitutional, jurisdictional, or other fundamental violations that occurred at trial").

After Frasch's collateral proceeding ended with the order granting him the right to file a belated application for leave to appeal, he was no longer proceeding under the UPCA. Indeed, he was "in the same procedural posture as if he had timely pursued a direct appeal." *Orange,* 318 F.3d at 1171. Thus, when Frasch filed his application for leave to appeal, he was not limited to asserting only the four types of claims allowed under the UPCA. *See* Md. Code Ann., Crim. Proc. § 7–102. Frasch was seeking direct review, and the Court of Special Appeals's consideration of his application constituted direct review. When the Court of Special Appeals considers a timely application for leave to appeal, it decides whether to "(1) deny the applica-

tion; (2) grant the application and affirm the judgment of the court; (3) grant the application and reverse the judgment of the lower court; (4) grant the application and remand the judgment to the lower court with directions to that court; or (5) grant the application and order further proceedings in the Court of Special Appeals." Md. R. 8–204(f)(1)–(5). The decision rendered by the Court of Special Appeals is part of the direct review.

As Maryland acknowledged at oral argument, Frasch was able to assert in his belated (and authorized) application in 2000 all of the claims he could have asserted in an application filed by the original deadline in 1989. That is the case because Frasch is "a defendant [who was] denied, through no fault of his own, his right to an appeal which he desire[d] and to which he [was] entitled." *Garrison v. State,* 350 Md. 128, 711 A.2d 170, 175 (1998) (emphasis omitted). Such a defendant is granted a belated appeal "to [e]nsure that [he] obtain[s] as full a review as if his appeal had been properly pursued." *Wilson v. State,* 284 Md. 664, 399 A.2d 256, 263 (1979). As a result, when the Court of Special Appeals of Maryland "read and considered" Frasch's application for leave to appeal, the court had the same decision options it would have had if Frasch had filed by the original deadline. *See* Md. R. 8–204(f)(1)–(5); J.A. 50. Frasch's application for leave to appeal was therefore treated in every respect as a timely one, which compels the conclusion that the Court of Special Appeals engaged in direct review.

### C.

The dissent argues that the Court of Special Appeals of Maryland's consideration of Frasch's belated application for leave to appeal was collateral review, not

direct review (or part of the "direct review process," *post* at 525). First, the dissent asserts that it was not direct review because Frasch resorted to postconviction (collateral) proceedings to obtain the right to file the application. *See post* at 526. The problem with this argument, as we have already explained, is that it ignores that (1) the proceeding in which Frasch obtained the right to file his belated application was distinct from the proceeding in which he filed the application and (2) the nature of review was different in each proceeding. *See supra* at 522.

Second, the dissent asserts that the Court of Special Appeals's consideration of Frasch's belated application for leave to appeal was not direct review because Frasch was not in the same procedural posture under the UPCA after the court considered his application as he would have been if he had filed a timely application. Frasch was in a different procedural posture, the dissent asserts, because a prisoner is entitled to file only one petition under the UPCA, and a prisoner like Frasch who uses the UPCA to obtain a belated application for leave to appeal his conviction and sentence must include any other postconviction claims in his one petition. *See post* at 527. The first problem with this argument is that Frasch's procedural posture under the UPCA after the Court of Special Appeals considered his application for leave to appeal has nothing to do with whether the court's consideration constituted direct review. The nature of review engaged in by the Court of Special Appeals is the key to determining whether the review was direct or collateral, and it is Frasch's procedural posture *in that court after he was allowed to file the application* that is a factor in determining the nature of review. As noted above, once Frasch filed his belated application, he was in the same procedural posture in the Court of Special Appeals as one who

timely pursues an application for leave to appeal. *See supra* at 523.

Moreover, the dissent is incorrect as a factual matter in contending that Frasch ended up in a different procedural posture under the UPCA after pursuing his application for leave to appeal. Frasch asserted a number of claims in his initial postconviction petition, including the claim that he was entitled to file a belated application for leave to appeal his conviction and sentence. The Maryland Circuit Court's order awarding Frasch the right to file a belated application did not address the other claims, but the order was entered without prejudice to his ability to file an additional petition "on those [claims]." J.A. 47. After his application for leave to appeal was rejected by the Court of Special Appeals, Frasch did in fact file an additional petition in the Maryland Circuit Court reasserting the unresolved claims raised in his first petition. Thus, Frasch, like a Maryland prisoner who files a timely application for leave to appeal, had one chance to assert all of his postconviction claims under the UPCA. He did so in his initial petition, and all of his claims were eventually considered by the Maryland Circuit Court over the course of two proceedings, which is an accepted practice for resolving postconviction claims in Maryland. *See Dixon v. State*, 84 Md.App. 347, 579 A.2d 786, 787–88 (1990) (recognizing the "rule that if a post conviction case is resolved in such a way as to make it unnecessary for the hearing judge to reach a particular allegation and the hearing judge in fact does not reach it, the unresolved allegation continues to retain its first petition status with the result that, upon a subsequent petition for post conviction relief raising that allegation, a petitioner [is] entitled to a hearing") (internal quotation marks and citation omitted). Because Frasch received the same collat-

eral review he would have received had he timely filed his application for leave to appeal, the dissent's assertion that he ended up in a different procedural posture is simply wrong.

### III.

In sum, when Frasch filed his application for leave to appeal his conviction and sentence to the Court of Special Appeals, he initiated direct review. That court engaged in direct review when it considered and denied his application on July 9, 2001. AEDPA's statute of limitations started running ninety days later, on October 8, 2001, when Frasch's time for seeking further direct review in the United States Supreme Court expired. Because Frasch was seeking state collateral review on that date, the statute of limitations was tolled until that review concluded on December 10, 2002. Thus, his petition for a writ of habeas corpus was not time-barred by AEDPA's one-year statute of limitations when he filed it on August 22, 2003. We therefore reverse the district court's order dismissing the petition and remand for further proceedings.

*REVERSED AND REMANDED.*

NIEMEYER, Circuit Judge, dissenting:

I would affirm the judgment of the district court, dismissing this habeas proceeding as untimely under AEDPA, 28 U.S.C. § 2244(d)(1)(A), and therefore I respectfully dissent.

On December 14, 1989, Douglas Frasch was sentenced in a Maryland state court on his guilty plea to a charge of sexual assault. Frasch sought no direct review of his judgment of conviction within the 30 days allowed for appealing such judgments under Maryland procedure. Accordingly, Frasch's judgment of conviction became final in January 1990.

Ten years later—on December 13, 1999—Frasch first sought postconviction review in Maryland state court, contending that he received ineffective assistance of counsel because his lawyer failed to appeal his guilty plea conviction. The Maryland court granted postconviction relief on October 3, 2000, allowing Frasch to file a belated application for leave to appeal his 1989 judgment of conviction to the Maryland Court of Special Appeals.

Frasch filed his application for leave to appeal within the 30 days allowed, and the Maryland Court of Special Appeals summarily denied his petition on July 9, 2001. Even though this appeal to the Maryland Court of Special Appeals was awarded as postconviction relief, Frasch treated it as a revived direct review and accordingly filed a second postconviction motion in state court on September 6, 2001. The state court denied his motion, and on December 10, 2002, the Maryland Court of Special Appeals denied Frasch leave to appeal the denial.

Frasch filed the habeas petition in this case on August 22, 2003, more than 13 years after his conviction became final, and more than 7 years after AEDPA, including its one-year statute of limitations for the filing of a habeas petition in federal court, was enacted. *See* 28 U.S.C. § 2244(d)(1)(A).

The majority concludes that because the Maryland courts granted Frasch postconviction relief in October 2000, allowing Frasch to pursue a belated appeal, the statute of limitations for his petition in federal court runs from October 8, 2001— the date on which Frasch's time to seek a writ of certiorari from the U.S. Supreme Court expired—plus any time that Frasch used in pursuing his second postconviction relief. Although the majority recognizes that AEDPA establishes a one-year statute of limitations running from "the date

on which the judgment [of conviction in state court] became final by the conclusion of *direct review* or the expiration of the time for seeking such review," 28 U.S.C. § 2244(d)(1)(A) (emphasis added), it rules that the direct review process that had concluded in 1990 was somehow revived in 2000 by the state court's grant of postconviction relief. The majority concludes therefore that when the revived direct review process concluded, the AEDPA clock started running again, making Frasch's federal petition filed on August 22, 2003, timely.

The problem with the majority's analysis is its conclusion that the relief granted through Maryland's postconviction process revived Maryland's direct review process that had concluded 10 years earlier. The U.S. Supreme Court has instructed that, for purposes of interpreting how AEDPA interacts with such state procedural rules, we must "look to how a state procedure functions." *Carey v. Saffold,* 536 U.S. 214, 223, 122 S.Ct. 2134, 153 L.Ed.2d 260 (2002). An examination of Maryland state law compels the conclusion that Maryland does not consider the rights granted to Frasch in this case to be a revival of Maryland's direct review process. Rather, Maryland considers the relief granted through a postconviction motion to be just that—postconviction relief—even though that relief included a belated right of appeal. More specifically, the processes leading up to and following Frasch's belated appeal leave no doubt that Frasch's belated appeal functioned as part of Maryland's postconviction relief process and not as a revival of its direct review process.

First, the process by which Frasch obtained a belated appeal indicates that it functioned to provide a remedy available under Maryland's *postconviction* process, not as part of its *direct* review process. To obtain his right to file a belated appeal, Frasch filed a petition for postconviction relief in the trial court, the principal means by which defendants obtain belated appeals in Maryland. *See Wilson v. State,* 284 Md. 664, 399 A.2d 256, 262 (1979) (holding that the Maryland Post Conviction Procedure Act gives circuit courts the power to grant belated appeals as remedies for conviction errors); *Michael v. State,* 85 Md.App. 735, 584 A.2d 1317, 1318 (1991) (noting that Maryland's rules of appellate procedure provide no mechanism for extending the 30–day period for filing a *direct* appeal and holding that, "in the absence of specific authority," the appeals period may not be extended on direct review). In *Wilson,* the court explained that the purpose of the Maryland Post Conviction Procedure Act was "to bring together and consolidate in one simple statute all the remedies, *beyond those that are incident to the usual procedures of trial and review,* which are presently available for challenging the validity of a sentence." *Wilson,* 399 A.2d at 262 (emphasis added). Thus, by recognizing that belated appeals are primarily available as remedies under the Post Conviction Procedure Act, the Maryland Court of Appeals acknowledged that the right to a belated appeal is outside the "direct review" process.

The majority argues that the process by which Frasch obtained the right to file a belated appeal is irrelevant to the question of whether the belated appeal itself constituted "direct review" because the pre-appeal process and the belated appeal took place in two separate proceedings. *See ante* at 524. The distinctness of the proceedings, however, only highlights the importance of examining the pre-appeal process. The central question in this case— that is, whether a belated appeal acts as "direct review"—depends on how the belated appeal fits within the broader scheme of Maryland's criminal justice system. Indeed, the very word "direct" demands an

analysis of the relationship between the belated appeal and the procedures leading up to it. As explained above, the fact that Frasch had to go through Maryland's post-conviction procedure to obtain a belated appeal—because he could not otherwise have obtained an extension of his time for filing a direct appeal—indicates that the belated appeal was not "direct[ly]" related to his initial conviction.

Second, the procedural posture of Frasch's case after the conclusion of his belated appeal also demonstrates that the belated appeal was part of the postconviction process and not a revival of the direct review process. Maryland's postconviction review statute provides that "[f]or each trial or sentence, a person may file *one petition* for relief under this title." Md. Code Ann., Crim. Proc. § 7–103 (emphasis added). Thus, if a defendant files a timely appeal for direct review of his conviction and the Maryland Court of Special Appeals denies his appeal, the defendant still has an opportunity to assert error by filing a petition under the postconviction statute. In contrast, if the defendant, rather than pursuing a timely direct appeal, obtains a belated appeal by filing a postconviction petition, which the Court of Special Appeals denies, the petitioner is deemed to have used his one postconviction petition unless he raised an additional point of error in his original petition. *See Dixon v. State,* 84 Md.App. 347, 579 A.2d 786, 788 (1990).

Here, in Frasch's initial state postconviction petition, he asserted a number of claims in addition to the ineffective counsel claim that formed the basis for his right to file a belated appeal. Because those additional claims were not addressed in the initial postconviction proceeding, they retained their first-petition status, thus enabling Frasch to reassert them after the completion of the belated appeal. For all other allegations of error, however, Frasch's first postconviction petition acted as a bar; having failed to raise them in the first petition, Frasch could not assert them after the belated appeal.

By stating that "[b]ecause Frasch received the same collateral review he would have received had he timely filed his application for leave to appeal," Frasch did not "end[ ] up in a different procedural posture," *see ante* at 524, the majority lumps together Frasch's procedural posture from before and after he obtained his belated appeal. While the sum of Frasch's rights under the postconviction act was not affected by the belatedness of his appeal, his rights as they stood after the completion of the appeal were most definitely altered. After the completion of the belated appeal, Frasch could not raise any new grounds for relief in a postconviction petition; he was limited to asserting only those claims raised in his first petition. In contrast, after the completion of a timely appeal, had Frasch filed one, Maryland's one-petition limit would not have constrained the grounds available for Frasch to raise in a postconviction petition. Thus, giving Frasch a belated appeal as part of his postconviction relief did not place him in the same procedural posture as if he had timely pursued direct review of his conviction, as he claims and the majority allows.

Because Maryland law treats belated appeals as remedies available under the Maryland Postconviction Procedure Act and because a petitioner who obtains a belated appeal through the postconviction process is not in the same procedural posture under Maryland procedure as a petitioner who files a timely direct appeal, Frasch's belated appeal was not part of Maryland's direct review process. That process ended in 1990 when Frasch's judgment of conviction became final.

Accordingly, AEDPA's statute of limitations for a habeas petition relating to a final 1989 judgment began to run on April 24, 1996, AEDPA's effective date, and expired on April 23, 1997, more than six years before Frasch actually filed the habeas petition in this case. Accordingly, it is barred by § 2244(d)(1)(A).