United States Court of Appeals
Fifth Circuit

**F I L E D**

January 7, 2004

Charles R. Fulbruge III
Clerk

In the

# United States Court of Appeals

for the Fifth Circuit

---

m 02-41721

---

GARY J. SALINAS,

Petitioner-Appellant,

VERSUS

DOUG DRETKE,

DIRECTOR, TEXAS DEPARTMENT OF CRIMINAL JUSTICE, CORRECTIONAL INSTITUTIONS DIVISION,

Respondent-Appellee.

---

Appeal from the United States District Court
for the Southern District of Texas
m C-02-CV-214

---

Before SMITH, BARKSDALE, and CLEMENT,
Circuit Judges.

JERRY E. SMITH, Circuit Judge:

Gary Salinas's petition for writ of habeas corpus was denied as time-barred. Proceeding *pro se*, Salinas concedes that his petition was untimely when it was originally filed but argues that intervening events have rendered his petition premature, not late. Specifically, Salinas reasons that the Texas Court of Criminal Appeals effectively restored him to the direct review phase of his appeal when it granted him the right to file an "out-of-time" petition for discretionary review in that court, and that

this action requires federal courts to measure the statute of limitations under the Anti-Terrorism and Effective Death Penalty Act ("AEDPA"), 28 U.S.C. § 2244, only from the moment at which the Court of Criminal Appeals subsequently declined to review the merits of his petition. As a result, Salinas avers, his petition should have been dismissed without prejudice. Concluding that the relief granted by the Court of Criminal Appeals had no effect on AEDPA's statute of limitations, we affirm.

## I.

Salinas was charged with capital murder and attempted capital murder. A jury found him guilty and assessed two life sentences. The intermediate court of appeals affirmed in an unpublished opinion on July 20, 2000.

The next logical step in Salinas's appeal would have been the filing of a petition for discretionary review ("PDR") with the Court of Criminal Appeals. He had thirty days from July 20 in which to do so, or forty-five days in which to request an extension of time. *See* TEX. R. APP. P. 68.2(a), (c). This did not happen, however, because he spent the next seven months in jail, unaware that his conviction had been affirmed. His lawyer, Edward Garza, had prepared a letter notifying him of the result, but neglected to mail it.

It was not until March 6, 2001SSin response to an inquiry from SalinasSSthat Garza notified him that the appeal had been unsuccessful and that his court-appointed duty to represent him was now terminated. In response to a second letter, Garza told Salinas that, time restrictions notwithstanding, he did not think Salinas possessed an issue meriting discretionary review and that Salinas's only remedy was "perhaps" to file a habeas petition.

Playing the cards he was dealt, Salinas filed a PDR and a motion for extension of time on April 7, 2001, but the PDR was dismissed as time barred on April 19, 2001. He filed a state application for habeas relief, arguing in part that his appellate counsel had failed to advise him timely of his right to file a PDR *pro se*. Following a remand to determine when Garza had informed Salinas that his conviction had been affirmed, the Court of Criminal Appeals denied Salinas's application for habeas relief without written order on March 13, 2002.

Salinas filed a federal habeas petition on April 28, 2002. The state asked the district court to dismiss the petition as time-barred. AEDPA provides that "[a] 1-year period of limitations shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court." *See* 28 U.S.C. § 2244(d)(1). Under the present facts, this period runs from "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." *See* 28 U.S.C. § 2244(d)(1)(A).[1]

In Texas, a PDR is considered to be part of the direct review process, which ends when the petition is denied or when the time available for filing the petition lapses. *Roberts v. Cockrell*, 319 F.3d 690, 693 (5th Cir. 2003).

---

[1] The limitations period runs from the later of the date on which (1) direct review was concluded in the state courts; (2) a state created impediment to filing an application was lifted; (3) a new, and retroactively applicable, constitutional right was recognized by the Supreme Court; or (4) the factual predicate of the claim could have been discovered through the exercise of due diligence. 28 U.S.C. § 2244(d)(1)(A)-(D). Salinas does not argue that any provision other than the first applies here.

Salinas's appeal was affirmed on July 20, 2000, and he had thirty days from that date to file a PDR with the Court of Criminal Appeals. Because August 19, 2000, was a Saturday, he had until August 21 to file a PDR and until August 21 of the following year to seek federal habeas relief. With eighteen days remaining on the federal clock, he filed a state application for habeas relief, an event that tolls the federal statute of limitations. *See* 28 U.S.C. § 2244(d)(2). Thus, when his state habeas application was denied by the Court of Criminal Appeals on March 13, 2002, he had eighteen days to file a federal habeas petition. The petition was not filed, however, until April 28.

A magistrate judge recommended that the district court equitably toll limitations, but the district court disagreed and dismissed Salinas's petition on November 18, 2002. On the same day, and without knowledge of the district court's action, Salinas mailed a motion to the district court informing it of the central fact in this appeal: Acting on its own motion on October 30, 2002, the Court of Criminal Appeals had reconsidered the state habeas petition and decided to award Salinas the right to file an "out-of-time" PDR. The effect of this was to "return [Salinas] to the point at which he can file a petition for discretionary review . . . . For purposes of the Texas Rules of Appellate Procedure, all time limits shall be calculated as if the Court of Appeals' decision had been rendered on the day the mandate of the Court of Criminal Appeals issues." *Ex Parte Salinas*, No. 74,462, at 2 (Tex. Crim. App. 2002).

Thus, under state law, Salinas was restored to the position of a recently convicted felon, eligible to pursue a form of direct review in the Court of Criminal Appeals.[2] In light of this development, his letter to the district court asked that it dismiss his federal habeas application, without prejudice, for failure to exhaust state remedies. When the court received that letter several days later, it concluded that it was without jurisdiction to grant the requested relief, because it had already ruled on the state's motion to dismiss the petition as time-barred.

II.

The question is whether, as a corollary to the revival of Salinas's right to file a PDR, AEDPA's one-year statute of limitations has not yet run on his petition. If it has run, we must also consider whether the district court abused its discretion in declining equitably to toll limitations.

A.

The state argues that the issue is before us pursuant to an improvidently granted certificate of appealability ("COA"). The district court dismissed Salinas's petition as untimely before it knew of the Court of Criminal Appeals' decision to grant the "out-of-time" PDR, and as a result, the state argues, the district court did not have an opportunity to consider the issue we decide today. Citing *United States v. Armstrong,* 951 F.2d 626, 630 (5th Cir. 1992), the state contends that the issue therefore was not preserved for appeal.

We disagree. Salinas's letter informing the district court of the action taken by the Court

[2] The Court of Criminal Appeals subsequently rejected Salinas's PDR, *Salinas v. State*, PDR No. 2102-02 (Jan. 22, 2003), but this fact has no bearing on the question whether the Court of Criminal Appeals' initial grant of the right to file a PDR alters Salinas's status under AEDPA.

of Criminal Appeals and asking for a dismissal without prejudice was received within ten days of the entry of judgment. It is therefore properly construed as a Federal Rule of Civil Procedure 59(e) motion to alter or amend the judgment, and the issue was properly before the district court.[3] As a result, we have jurisdiction to review Salinas's claims.

### B.

We must consider the effect the Court of Criminal Appeals' order has on AEDPA's statute of limitations, a question of law we review *de novo*. *Egerton v. Cockrell*, 334 F.3d 433, 436 (5th Cir. 2003). When the Court of Criminal Appeals grants the right to file an "out-of-time" PDR, it restores the petitioner to the position he was in when he first possessed the right to petition for discretionary review.[4] A defendant who still has the right to file a PDR is considered to be in the midst of the direct review process. *Roberts*, 319 F.3d at 693.

---

[3] *See Harcon Barge Co. v. D&G Boat Rentals, Inc.*, 784 F.2d 665, 667 (5th Cir. 1986) (en banc) ("[W]e hold that any post-judgment motion to alter or amend the judgment served within ten days after the entry of the judgment . . . is within the unrestricted scope of Rule 59(e) and must, however designated by the movant, be considered as a Rule 59(e) motion for purposes of Fed. R. App. P. 4(a)(4).").

[4] *See Ex Parte Salinas*, No. 74,462, at 2 ("The proper remedy in a case such as this is to return Applicant to the point at which he can file a petition for discretionary review."); *see also Ex Parte Torres*, 943 S.W.2d 469, 472 (Tex. Crim. App. 1997) (stating that "granting an out-of-time appeal restores the pendency of the direct appeal"); *Ex Parte Daigle*, 848 S.W.2d 691, 692 (Tex. Crim. App. 1993) (returning a petitioner "to the point at which he can give notice of appeal.").

On this basis, Salinas urges that the statute of limitations could not have lapsed in April 2002, because the prescription period should have begun only on the conclusion of direct review, *see* 28 U.S.C. § 2244(d)(1)(A), and direct review once again was pending on November 18, 2002, when the district court dismissed his petition. Thus, Salinas argues, his conviction was "de-finalized," and the statute of limitationsSSthough legitimately initiated in August 2000SSshould be deemed to have begun again with the rejection of the PDR in January 2003.

We disagree. On its face, AEDPA provides for only a linear limitations period, one that starts and ends on specific dates, with only the possibility that tolling will expand the period in between. *See* § 2244(d)(1), (2). So long as the petitioner is being held pursuant to the same state court judgment, nothing in AEDPA allows for a properly initiated limitations period to be terminated altogether by collateral state court action. Rather, the statutory framework only provides for the tolling of limitations during the pendency of state collateral review. *See* § 2244(d)(2).

Thus, the issue is not whether the Court of Criminal Appeals' action revitalized Salinas's limitations period, but rather whether the existence of that potential relief prevents the limitations period from starting to run until after that level of appeal has been denied. That is to say, we need to determine whether, in Texas, the mechanism by which Salinas obtained the right to file an "out-of-time" PDR is part of the direct or collateral review process. If that relief comes as a result of direct review, there would be no basis for limitations even to begin running until the Court of Criminal Appeals has finalized the judgment by declining to grant relief on that level of appeal. If, on the

4

other hand, an "out-of-time" PDR is awarded only as a result of the collateral review process, limitations is tolled merely while the petitioner seeks to obtain that relief.

After reviewing the relevant state law,[5] we conclude that the Court of Criminal Appeals is authorized to grant this form of relief only through state habeas proceedings. As a result, when a petitioner convicted in the Texas system acquires the right to file an "out-of-time" PDR, the relief tolls AEDPA's statute of limitations until the date on which the Court of Criminal Appeals declines to grant further relief, but it does not require a federal court to restart the running of AEDPA's limitations period altogether.[6]

Texas caselaw shows that to acquire the right to file an "out-of-time" PDR, a petitioner first must file a state habeas petition.[7] That was the mechanism Salinas used and that was

[5] The state argues that a statement in *Roberts* prevents us from looking at state law to resolve Salinas's claims. We disagree. In *Roberts*, we were asked to determine whether, for purposes of § 2244's statute of limitations, a state appellate judgment becomes final on the date on which it is issued, or the date on which the mandate is released. *Roberts*, 319 F.3d at 693. In the course of holding that the relevant date is the one on which the judgment is issued, we stated that we could "find no reason to look to state law to determine when a state conviction becomes final for the purposes of § 2244(d)(1)(A)." *Id.* at 694.

The state's argument ignores the fact that the court in *Roberts* was asked only to determine when federal law considers an action to have been taken, not whether a state proceeding is part of the state's "direct review" process at all. The issue we address today is wholly distinct from one in which we assume, at the outset, that direct review ended with the occurrence of a specific event, and simply seeks to ascertain the date on which federal law considers that event to have occurred.

In contrast, we are asked to look at a category of appealSSthe "out-of-time" PDRSSand determine whether it is part of that state's direct or collateral processes. That is not a question one can answer without looking at the state system to ascertain whether it has been designated as part of direct or collateral review. State law defines the contours of the state appellate process, and it is only by looking at the state system that we can determine whether Salinas's right to file an "out-of-time" PDR comes before, or after, the conclusion of direct review in state courts.

[6] In most cases in which the Court of Criminal Appeals grants the right to file an "out-of-time" PDR, the federal statute of limitations will not lapse until after the Court of Criminal Appeals receives the petition and decides whether to hear the case on the merits. This is because the statute of limitations is tolled during the pendency of the collateral proceedings that the petitioner uses to request the right to file an "out-of-time" PDR. Salinas's case is unusual, because the Court of Criminal Appeals initially denied his petition for habeas relief and granted the "out-of-time" PDR only on its own motion. That action ceased the tolling of limitations, allowing it to run fully before the Court of Criminal Appeals granted relief. Had the Texas court instead left Salinas's application pending until the day on which it allowed him to file the "out-of-time" PDR, limitations would have remained tolled until January 22, 2003, when the court declined to exercise further review.

[7] *See Ashorn v. Texas*, 77 S.W.3d 405, 409 (Tex. App.SSHouston [1st Dist.] 2002, pet. ref'd) (Opinion on motion for reh'g) ("The appropriate vehicle for seeking an out-of-time appeal from a final felony conviction is by writ of habeas corpus pursuant to Article 11.07 of the Texas Code of Criminal Procedure.").

used in every other case that we have found.[8]

This conclusion is buttressed by the fact that the Texas Rules of Appellate Procedure make no provision for the issuance of an "out-of-time" PDR. Rule 68.2, Texas Rules of Appellate Procedure, sets a thirty-day limit for filing an original PDR. There is a provision for seeking an extension, but Salinas failed to comply with its mandate that a motion for extension be filed within fifteen days of the last day for filing the petition. *See* TEX. R. APP. P. 68.2(c). Beyond that, a petitioner has no right to seek relief directly from the Court of Criminal Appeals; instead, all relief must be requested through collateral proceedings.

Therefore, because Salinas's right to file the "out-of-time" PDR is necessarily the product of state habeas review, it does not arise under the "direct review" procedures of the Texas judicial system. Accordingly, the Court of Criminal Appeals' granting of Salinas's writ does not alter the fact that limitations set forth in 28 U.S.C. § 2244(d)(1)(A), properly began to run on August 21, 2000, and fully lapsed on March 31, 2002.[9]

### III.

In the alternative, Salinas asks for equitable tolling of limitations. AEDPA's statute of limitations may be equitably tolled, but only in "rare and exceptional circumstances." *Davis v. Johnson*, 158 F.3d 806, 811-12 (5th Cir. 1998). "[T]he decision to invoke equitable tolling is left to the discretion of the district court, and we review such decisions only for abuse of discretion." *Cousin v. Lensing*, 310 F.3d 843, 847-48 (5th Cir. 2002), *cert. denied*, 123 S. Ct. 2277 (2003).

In *Cousin*, *id.* at 846, we considered whether it was an abuse of discretion not to toll limitations where a petitioner was harmed by the actions of an attorney who, after receiving notice that his client's *in forma pauperis* motion had been denied, failed to inform his client for two years that the five-dollar filing fee needed to be paid. Cousin argued that the district court should have equitably tolled AEDPA's limitations period, because neither he nor his new attorneys received notice of the denial of his motion. *Id.* at 848. We noted that "[e]quitable tolling is warranted . . . only in situations where the plaintiff is actively misled by the defendant . . . or is prevented in some extraordinary way from asserting his rights." *Id.* (citations omitted). Following other circuits, we concluded that "mere attorney error or neglect is not an extraordinary circumstance

---

[8] *See, e.g.*, *Ex Parte Rosales*, 2003 WL 22410055, at * 1 (Tex. Crim. App. Oct. 22, 2003) (granting the right to seek an "out-of-time PDR" by filing a state habeas petition); *Ex Parte Thompson*, 2003 WL 22410064, at * 1 (Tex. Crim. App. Oct. 22, 2003) (same); *see also Ex Parte Wilson*, 956 S.W.2d 25 (Tex. Crim. App. 1997) (setting out the standard for relief).

[9] This analysis is consistent with that of a sister circuit, even though we reach a different result. In *Orange v. Calbone*, 318 F.3d 1167, 1170-71 (10th Cir. 2003), the court held that the "appeal out of time" procedure offered by the Oklahoma Court of Criminal Appeals was part of that state's direct (continued...)

[9](...continued) appeal process. If there is any inconsistency between our decision today and that in *Orange*, it is only because of the underlying differences in the laws of the states over which we preside. The Oklahoma Rules of Appellate Procedure specifically provide for the possibility of an "appeal out of time," and they allow its use in both direct and collateral proceedings. *Id.* at 1171. Texas has created a different judicial system, one that does not provide the same right.

such that equitable tolling is justified." *Id*. at 849.  In light of *Cousin*, the district court did not abuse its discretion when it held that Salinas had failed to show the existence of the sort of "rare and exceptional" circumstances that would warrant equitable tolling.

The judgment is AFFIRMED.