**United States Court of Appeals**
**Fifth Circuit**

**F I L E D**

**August 27, 2004**

**Charles R. Fulbruge III**
**Clerk**

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT
_____

No. 03-40527
_____

FREDDIE JAMES FOREMAN,

Petitioner-Appellant

v.

DOUG DRETKE, DIRECTOR, TEXAS DEPARTMENT OF CRIMINAL JUSTICE,
CORRECTIONAL INSTITUTIONS DIVISION,

Respondent-Appellee

--------------------
Appeal from the United States District Court
for the Eastern District of Texas
--------------------

Before DeMOSS, STEWART and PRADO, Circuit Judges.

EDWARD C. PRADO, Circuit Judge:

In this case we address whether "direct review" for AEDPA limitations purposes includes Petitioner's timely-filed state appeal, which the state court lacked jurisdiction to consider. The district court concluded that Petitioner's appeal was not "direct review" and thus dismissed Petitioner's habeas petition as time-barred. We disagree and so reverse.

**Background Facts and Procedural History**

Acting under an agreement, in 1993 Petitioner-Appellant Freddie James Foreman pleaded guilty in Texas state court to possession of a controlled substance. He received deferred adjudication and was placed on probation (also called "community

1

supervision") for ten years.  In November 1999, the state moved to revoke Foreman's probation for delivery of a controlled substance.  Over Foreman's "not true" plea, on May 15, 2000, the state court revoked Foreman's probation and adjudicated him guilty of the 1993 charge.  The court then sentenced Foreman to 27 years in prison.

On June 12, 2000, Foreman timely filed a notice of appeal with the Texas intermediate appellate court.  Foreman filed his appellate brief on April 23, 2001 in which he argued that the evidence did not support the trial court's finding that he had violated his probation.  On July 25, 2001, the appeals court dismissed Foreman's appeal for "want of jurisdiction," concluding that, under Texas Code of Criminal Procedure article 42.12 § 5(b), the court lacked jurisdiction to consider issues relating to Foreman's revocation.  Foreman then timely filed a petition for discretionary review ("PDR") with the Texas Court of Criminal Appeals ("CCA").  The CCA denied this petition on October 30, 2001.  Subsequently, Foreman filed a state habeas petition on March 25, 2002; the CCA denied Foreman's habeas petition on June 12, 2002.

Foreman's 28 U.S.C. § 2254 habeas petition followed on August 6, 2002.  The district court referred this petition to a magistrate judge.  The magistrate judge recommended dismissing Foreman's petition as untimely because, contrary to the limitations contained in the Antiterrorism and Effective Death

Penalty Act ("AEDPA"), it was filed more than one year after his conviction became "final."  The magistrate judge concluded that under Texas law, specifically *Olivo v. State*, 918 S.W.2d 519 (Tex. Crim. App. 1996), the dismissal of Foreman's appeal for want of jurisdiction "had the same effect as if the appeal never existed."  Because he treated the dismissed appeal as if it had never been filed, the magistrate judge found that Foreman's conviction became final for habeas limitations purposes on June 14, 2000 – 30 days after Foreman's parole was revoked.  Under this calculation, Foreman's habeas limitations period expired one year later.  Because it was filed after that date, Foreman's state habeas did not toll the limitations period.  Finding the petition therefore untimely, the magistrate judge recommended dismissing Foreman's petition.  Foreman objected to the magistrate judge's report, but the district court accepted it after conducting a *de novo* review.  The district court dismissed Foreman's habeas petition as time-barred, but granted Foreman a Certificate of Appealability on the time-bar issue.  We review the district court's decision *de novo*.  *See Giesberg v. Cockrell*, 288 F.3d 268, 270 (5th Cir. 2002).

**Did the district court err by dismissing Foreman's habeas petition as time-barred?**

The issue before us involves the classification and effect of Foreman's state appeal.  Therefore, to evaluate the parties'

arguments, we must first examine Foreman's state proceedings. In his state appeal, Foreman challenged both the determination that he violated his probation and the related adjudication of guilt. This adjudication occurred under TEX. CODE CRIM. PROC. art. 42.12, which provides, in relevant part:

> On violation of a condition of community supervision imposed under Subsection (a) of this section, the defendant may be arrested and detained as provided in Section 21 of this article. The defendant is entitled to a hearing limited to the determination by the court of whether it proceeds with an adjudication of guilt on the original charge. No appeal may be taken from this determination . . . .

TEX. CODE CRIM. PROC. art 42.12 Sec. 5(b).

Texas courts have interpreted this appeal provision to mean that a defendant "may not raise on appeal contentions of error in the adjudication of guilt process." *Connolly v. State*, 983 S.W.2d 738, 741 (Tex. Crim. App. 1999). Given this law, the parties agree that the Texas court correctly dismissed Foreman's appeal. However, the parties dispute what conclusions can be drawn from this dismissal – specifically whether, for AEDPA limitations, an appeal can be considered "direct review" when the state court had no jurisdiction to review that appeal.

AEDPA provides that a petitioner may file a habeas petition within one year of "the date on which the judgment became final by the conclusion of direct review or the expiration of the time

4

for seeking such review." 28 U.S.C. § 2244(d)(1)(A).[1] This provision supplies two alternate methods under which a conviction can become final: direct review can end or the time to pursue the direct review can expire. Thus, because it triggers the limitations period, the date a judgment becomes final is often critical to a petitioner's federal habeas petition.

The date is critical here. As the district court noted, if Foreman's appeal to the state intermediate court and his PDR to the CCA are considered "direct review," then his habeas petition is timely. If, on the other hand, his state appeal is excluded, the limitations period began running thirty days after the state court judgment, when his time to appeal ran out.[2] Therefore, whether Foreman's appeal was "direct review" determines when his judgment became final and whether his habeas petition was timely.

Direct review, which includes a petition for certiorari to the Supreme Court, occurs "when the Supreme Court either rejects the petition for certiorari or rules on its merits." *Roberts v. Cockrell*, 319 F.3d 690, 694 (5th Cir. 2003). If no petition is filed, then we examine the second method of creating finality, "the expiration of the time for seeking such review." *Id*. If a

---

[1]There are additional methods of starting the limitations period. *See* 28 U.S.C. § 2244(d)(1). The parties agree that only finality is relevant in this case.

[2]The parties agree that Foreman could have appealed other aspects of his conviction, such as his sentence.

criminal defendant has pursued his direct appeal through the highest state court, then this period includes the 90 days for filing a petition for certiorari to the Supreme Court. *Id*. If not, then it includes the time for seeking further state-court direct review. *Id*. At the conclusion of these periods, the judgment becomes final.

When addressing finality, we have previously discussed the intersection of AEDPA and state law. In so doing, we confirmed that AEDPA, not state law, determines when a judgment is final for federal habeas purposes. *Roberts*, 319 F.3d at 694. In *Roberts v. Cockrell*, we held that the petitioner's judgment became final when the time ran out for him to file a PDR, not the later date when the appeals court issued its mandate. *Id*. Although under Texas law the judgment was not final until the court issued its mandate, we concluded that the Texas rules did not control AEDPA review. *Id*. Thus, the petitioner's conviction became final for AEDPA purposes before his conviction was final under state law. *Id*. at 694-95. We noted that we did not look to state law to make this decision because AEDPA provides its own definition of finality. *Id*. at 694.

Yet, as even the *Roberts* court conceded, some consideration of state law is inevitable when analyzing ADEPA limitations. *Roberts*, 319 F.3d at 693-94; *see also Salinas v. Dretke*, 354 F.3d 425 n.5 (5th Cir. 2004). In *Salinas v. Dretke*, the CCA granted

the petitioner the right to file an out-of-time PDR.  *Salinas*, 354 F.3d at 428.  Under state law, granting this right "restores the petitioner to the position he was in when he first possessed the right to petition for discretionary review.  A defendant who still has the right to file a PDR is considered to be in the midst of the direct review process."  *Id*. at 429 (footnote omitted).  The question before us in *Salinas* was whether the CCA's grant of this right to the petitioner affected his AEDPA time limits.  We concluded that the effect of the CCA's actions depended on whether the CCA awarded this relief as part of the direct review process or as part of the collateral review process.  *Id*. at 430.  If the CCA's grant was part of direct review, then the AEDPA clock did not begin to run until this direct review was complete.  *Id*.  To determine whether the CCA could have granted this relief as part of direct review or could only have granted it under collateral review, we necessarily examined state law.  *Id*. at 430 n.5.  We determined that the CCA could only have granted this relief on collateral review.  *Id*. at 430.  Based on this determination, we concluded that, although the pendency of the out-of-time PDR, like any other collateral review, would toll the limitations period, the CCA's grant of permission to file a late PDR did not undo the running of AEDPA deadlines.  *Id*.  In other words, in *Salinas* we held that, although a PDR is part of the direct review process, the grant of

permission to file a late PDR is not part of direct review. Thus, the grant did not affect the finality of petitioner's conviction for AEDPA purposes. *Id*. at 431. In sum, we required an examination of state law (to determine whether particular relief was available on direct appeal or only as part of the state habeas proceeding), but were not controlled by the effects of the state proceeding (namely, that under state law the petitioner had been restored to the position of someone on direct review).[3]

We also are aided by *Artuz v. Bennett*, 531 U.S. 4 (2000), a Supreme Court case addressing a fairly analogous situation under New York law. *Artuz* addressed § 2244's tolling provision, which tolls the limitations period for the time that a "properly filed application for State post-conviction or other collateral review" was pending. *Id*. at 5 (quoting 28 U.S.C. § 2244(d)(2)). In *Artuz*, the state argued that this provision did not apply to

---

[3]These cases resolve one of Respondent's contentions about the state court's lack of jurisdiction. Citing *Olivo v. State*, 918 S.W.2d 519 (Tex. Crim. App. 1996), Respondent originally argued that state courts treat an appeal filed without jurisdiction as if it had never been filed and that, under AEDPA, federal courts are obligated to give the same effect to a jurisdictionally-deficient appeal. Regardless of the validity of Respondent's *Olivo* reading, we note that *Salinas* mandates that we are not bound by the state court's view of an appeal. Further, in granting Foreman's Certificate of Appealability, the district court stated that, "an argument may be made that 'finality' for purposes of 28 U.S.C. § 2244(d)(1)(A) should not hinge on how Texas courts decide an appeal but on the conclusion of the direct review process or the expiration of the time for seeking review." When expressed this way, the issue is controlled by *Roberts*.

Artuz's attempts to obtain state post-conviction relief because his state filing contained claims that were procedurally barred under New York law. *Id*. at 7. As support, the state argued that an application was not properly filed "unless it complies with all mandatory state-law procedural requirements that would bar review of the merits of the application." *Id*. at 8.

The Supreme Court rejected this argument. Instead, the Court distinguished an analysis of when a petition was properly filed from an analysis of the petition's merits:

> an application is "*properly* filed" when its delivery and acceptance are in compliance with the applicable laws and rules governing filings. These usually prescribe, for example, the form of the document, the time limits upon its delivery, . . . the court and office in which it must be lodged, and the requisite filing fee. . . . In some jurisdictions the filing requirements also include, for example, preconditions imposed on particular abusive filers . . . or on all filers generally. . . . But in common usage, the question whether an application has been "properly filed" is quite separate from the question whether the claims *contained in the application* are meritorious and free of procedural bar.

*Id*. at 8-9 (citations and footnote omitted).

Here, Respondent asks us to read the phrase "valid" into AEDPA's "direct review" language by asserting that direct review can only mean jurisdictionally-valid review. We decline to reach this conclusion. First, the reasoning in *Artuz* cautions against reading phrases or merits-related requirements into AEDPA's language. Second, *Salinas* encourages us to look to the actual state processes that a petitioner has used. So, following

9

*Salinas*, we ask whether Foreman engaged the Texas direct review process. Because Foreman filed a timely appeal in the intermediate court and timely filed a PDR, we conclude that he participated in direct review. Foreman's conviction thus became final for AEDPA purposes 90 days after the CCA denied his PDR. *See Roberts*, 319 F.3d at 694.

Other considerations also support this result. First, the parties agree that Foreman could have appealed some aspects of his case, such as his sentence. It would be unnecessarily complicated to make a petitioner's AEDPA timeline depend on the content of his state appellate briefs. Additionally, a ruling that Foreman's appeal was not direct review would create an incentive for petitioners to file premature federal habeas petitions. For example, in this case, under Respondent's theory, Foreman's AEDPA period had run before the intermediate appellate court dismissed his appeal. Ruling as Respondent requests, then, would give prisoners like Foreman reason to file premature federal habeas petitions for fear of the consequences of an appellate court dismissing an appeal for want of jurisdiction. We see no reason to create such an incentive, which runs counter to AEDPA's "purpose to further the principles of comity, finality, and federalism." *Williams v. Taylor*, 529 U.S. 420, 436 (2000).

Thus, we simply ask whether Foreman filed a timely appeal in

10

the state court system.  We conclude that he did and that his state appeal constituted direct review.  Therefore, Foreman filed his habeas petition within AEDPA's limitations period.  Our holding here is limited – merely that Foreman's timely-filed appeal was direct review.  Accordingly, we reverse the district court's dismissal of Foreman's petition as time-barred and remand the case to the district court to consider its merits.

REVERSED AND REMANDED.