# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

July 6, 2011

No. 09-50672

Lyle W. Cayce
Clerk

GODFREY AARON MARK,

Petitioner-Appellant,

v.

RICK THALER, DIRECTOR, TEXAS DEPARTMENT OF CRIMINAL JUSTICE, CORRECTIONAL INSTITUTIONS DIVISION,

Respondent-Appellee.

Appeal from the United States District Court
for the Western District of Texas, Waco Division

Before GARWOOD, ELROD, and SOUTHWICK, Circuit Judges.

JENNIFER WALKER ELROD, Circuit Judge:

Godfrey Aaron Mark, Texas prisoner # 1237559, appeals the dismissal of his petition for habeas corpus under 28 U.S.C. § 2254 challenging his Texas conviction for aggravated robbery. The district court dismissed Mark's habeas petition as time-barred. This court granted a certificate of appealability (COA) to review the district court's timeliness determination. For the reasons that follow, we conclude that Mark's petition was timely, and therefore REVERSE the judgment of the district court and REMAND the petition for further consideration.

After Mark pleaded guilty to aggravated robbery, the state trial court sentenced Mark to 25 years of imprisonment. Although Mark appealed his conviction and sentence, he later filed a motion to voluntarily dismiss his appeal. On February 22, 2005, the Court of Appeals granted his motion and entered a judgment dismissing the appeal. Mark did not seek review by the state's highest court, the Texas Court of Criminal Appeals (CCA). Subsequently, Mark sought postconviction relief in state court. On February 21, 2006, he filed a state habeas petition, which was denied by the CCA on April 9, 2006. Mark then filed the instant federal habeas petition on May 4, 2006.

When a district court denies a habeas petition on procedural grounds, our review is *de novo. Larry v. Dretke*, 361 F.3d 890, 893 (5th Cir. 2004). Under the Antiterrorism and Effective Death Penalty Act (AEDPA), a state prisoner must file his federal habeas petition before the expiration of the one-year statute of limitations. 28 U.S.C § 2244(d)(1). A properly filed state habeas petition tolls the statute of limitations as long as it remains pending. *Id.* § 2244(d)(2). The one-year period begins to run from "the date on which the [state court] judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." *Id.* § 2244(d)(1)(A). Thus, "because it triggers the limitations period, the date a judgment becomes final is often critical" in assessing the timeliness of a federal habeas petition. *Foreman v. Dretke*, 383 F.3d 336, 338 (5th Cir. 2004).

A state conviction becomes final under AEDPA when there is no further "'availability of direct appeal to the state courts.'" *Jimenez v. Quarterman*, 555 U.S. 113, 129 S. Ct. 681, 685 (2009) (quoting *Caspari v. Bohlen*, 510 U.S. 383, 390 (1994)). "Until that time, the process of direct review has not come to an end and a presumption of finality and legality cannot yet have attached to the conviction and sentence." *Id.* at 685-86 (internal quotation marks omitted). Under Texas law, a petitioner may seek review in the Court of Criminal Appeals by filing a petition for discretionary review (PDR) within 30 days after the

intermediate court renders judgment. Tex. R. App. P. 68.1, 68.2(a). We have held that, when a petitioner elects not to file a PDR, his conviction becomes final under AEDPA at the end of the 30-day period in which he could have filed the petition—that is, "when the time for seeking further direct review expired." *Roberts v. Cockrell*, 319 F.3d 690, 694-95 (5th Cir. 2003).

Here, after Mark's motion to dismiss his appeal was granted, he did not file a PDR. Therefore, applying our well-settled rule, Mark's conviction became "final" within the meaning of AEDPA 30 days after the Court of Appeals entered judgment dismissing his appeal. That well-settled rule would not apply, however, if Mark's direct review process immediately came to an end when the Court of Appeals entered judgment because he was somehow prohibited from filing a PDR. In other words, Mark's date of finality turns on whether Texas law would have permitted him to file a PDR in the 30 days after the Court of Appeals granted his motion to dismiss. Our review of the Texas Rules of Appellate Procedure suggests that he could have done so.

The Rules provide that "[o]n petition by any party, the Court of Criminal Appeals may review a court of appeals' decision in a criminal case." Tex. R. Civ. P. 68.1. Under the Rules, dismissal of an appeal constitutes a judgment, which starts the running of the 30 days for filing a PDR to the CCA. Beneath the heading "Types of Judgment," Rule 43.2 lists six possible dispositions by the Court of Appeals, including "dismiss the appeal." Tex. R. App. P. 43.2. If a party wishes to seek review of such a judgment in the CCA, "[t]he petition must be filed within 30 days after . . . the day the court of appeals' judgment was rendered." Tex. R. App. P. 68.2(a).

Nevertheless, Respondent argues that a judgment signed upon voluntary dismissal is not a "decision" within the meaning of Rule 68.1. A careful examination of the Rules undercuts this assertion, however. A criminal

defendant cannot unilaterally dismiss his appeal once it has been filed.[1] Rather, he must make a motion, asking the court to dismiss it. *See* Tex. R. App. P. 42.2. The court retains discretion in deciding such a motion: "[T]he appellate court *may* dismiss the appeal upon the appellant's motion." Tex. R. App. P. 42.2(a) (emphasis added). Therefore, an order granting that motion—even if a foregone conclusion in the ordinary case—constitutes a "decision" by the court, from which "any party" may petition for review by the CCA. Tex. R. App. P. 68.1. Such an order would be unlikely to require a written opinion, but that fact does not change the analysis. Indeed, the rules governing the content of a petition to the CCA contemplate such a scenario. A petition must state "the date any opinion of the court of appeals was handed down, *or the date of any order of the court of appeals disposing of the case without an opinion.*" Tex. R. App. P. 68.4(e)(1) (emphasis added). Thus, a judgment dismissing an appeal, whether or not accompanied by a written opinion, is a discretionary "decision" by the Court of Appeals, allowing "any party" 30 days in which to petition for review by the CCA. Tex. R. App. P. 68.1.

Respondent also suggests that the filing of a PDR following a voluntary dismissal would be futile because the CCA would not likely grant discretionary review. This argument misses the point. The relevant question is whether Mark was entitled to file a petition, not whether a hypothetical petition would have been successful. If he had the right to do so, then his "process of direct review" had not "come to an end." *Jimenez*, 129 S. Ct. at 685 (alterations and internal quotation marks omitted). The merits of the petition itself are simply not germane to the analysis of whether the "availability of direct appeal to the

---

[1] This rule stands in contrast to the rule governing civil actions in the Texas trial courts. A civil plaintiff may voluntarily dismiss his case in the trial court—without the need for a court order—"[a]t any time before the plaintiff has introduced all of his evidence." Tex. R. Civ. P. 162. Such a dismissal is effective immediately upon filing. *See Travelers Ins. Co. v. Joachim*, 315 S.W.3d 860, 862 (Tex. 2010) ("A nonsuit extinguishes a case or controversy from the moment the motion is filed . . . ; the only requirement is the mere filing of the motion with the clerk of court." (internal quotation marks omitted)).

state courts . . . has been exhausted."[2]  *Id.* (internal quotation marks and citations omitted).

Thus, Respondent has not identified any provision of Texas law that would have prevented Mark from filing a petition for discretionary review within the 30-day period after the court granted his motion to dismiss his appeal.  Nothing in the Texas Rules of Appellate Procedure states, or even suggests, that a defendant who makes a motion to dismiss his appeal is foreclosed from filing a PDR.  Indeed, the language allowing review by the CCA "on petition by *any* party" means that a petition may be filed even by a prevailing party—one who, like Mark, received exactly the relief he sought in the appellate court.  Tex. R. App. P. 68.1 (emphasis added).

The dissent faults us for not following the general rule that a notice of appeal voluntarily dismissed should be treated as if it were never filed at all. *See, e.g.*, *Williams v. United States*, 553 F.2d 420, 422 (5th Cir. 1977).  The cases relied upon by the dissent for this point, however, are direct appeals in federal court.  Notably absent are any Texas cases holding that a similar rule applies to criminal appeals in that state's courts.  Determining when the time for seeking further direct review in the state court expires—thus bringing the process of state direct review to an end and rendering the conviction "final" under AEDPA—by its own terms requires us to examine Texas law.[3]  The rules

---

[2] The fact that the Court of Appeals issued its mandate on the same day it granted Mark's motion to dismiss the appeal is similarly irrelevant.  Our precedent squarely forecloses any argument that finality under AEDPA turns on the date the state court issues its mandate: "[T]he issuance of the mandate by the state court of appeals is of no consequence for the purposes of § 2244(d)(1)(A)," which asks only when the time for seeking further direct review expired.  *Roberts*, 319 F.3d at 694-95.

[3] We have held that "final" should be given a consistent meaning in habeas proceedings whether under § 2255, which governs habeas petitions based on federal convictions, or § 2254, which governs habeas petitions based on state convictions.  *See, e.g.*, *United States v. Plascencia*, 537 F.3d 385, 388 (5th Cir. 2008).  Specifically, convictions—whether state or federal—become "final" under AEDPA when the process of direct review comes to an end.  *See id.*  The distinction between the two becomes important because state and federal convictions necessarily entail different processes of direct review and, of course, the timeline of the appeal

governing the process of direct review in federal courts simply cannot tell us when Mark's process of direct review came to an end in Texas's courts. In other words, it may well be the case that when a federal criminal direct appeal is voluntarily dismissed, further review is no longer possible and, thus, the federal conviction immediately becomes final under AEDPA for purposes of any future petition under 28 U.S.C. § 2255, although at least one court has taken a contrary view. *See Latham v. United States*, 527 F.3d 651, 652-53 (7th Cir. 2008) (holding that defendant's federal conviction did not become final under AEDPA until the time for seeking Supreme Court certiorari expired, despite the voluntary dismissal of his appeal). Regardless, the same cannot be said about a *state* criminal direct appeal in Texas court. As explained above, further direct review of Mark's appeal was still possible during the 30-day period for seeking review in the CCA.

Although the dissent asserts that our reasoning conflicts with *United States v. Plascencia*, 537 F.3d 385 (5th Cir. 2008), that case is inapposite because it dealt with a federal conviction where the notice of appeal was filed untimely. Here, Mark did not file an untimely PDR, but merely argues that his conviction became final only once the time for filing a *timely* PDR expired. Moreover, to the extent that *Plascencia* is relevant at all, it actually supports Mark's argument. In *Plascencia*, we held that where a timely notice of appeal of a federal conviction is not filed, the conviction becomes final under AEDPA at the end of the 10-day period for filing such a notice. *Id.* at 388. By failing to file a notice of appeal during this period, "Plascencia allowed the [federal] direct review process to expire, and his conviction became final on that date." *Id.* By the same logic, by failing to file a PDR, Mark allowed the state direct review process to

---

process may vary between state court and federal court, and even from state to state. For this reason, we have recognized that even though "final" should be given a uniform construction, "some consideration of state law is inevitable when analyzing [AEDPA] limitations." *Foreman*, 383 F.3d at 339.

expire, and his conviction became final at the conclusion of the 30-day period for filing such a petition. Therefore, the well-worn rule we apply here is perfectly consistent with *Plascencia*.

Likewise, applying this well-established rule does not implicate—much less run afoul of—footnote 4 of *Jimenez v. Quarterman*. There, the Supreme Court noted that it had "previously held that the possibility that a state court may reopen direct review does not render convictions and sentences that are no longer subject to direct review nonfinal." *Jimenez*, 129 S. Ct. at 686 n.4 (internal quotation marks omitted). Mark's process of direct review, however, did not come to an end until the time for filing a PDR with the CCA expired—30 days after the Texas Court of Appeals dismissed his appeal. Until that time, his conviction was not final, so he has no need to invoke *Jimenez*'s "reopening of direct review" rule in order to take advantage of this 30-day window.

In short, this case presents no reason for us to deviate from our precedent holding that, where a defendant does not file a petition for discretionary review with the Texas Court of Criminal Appeals, his conviction becomes final under AEDPA when the time for doing so expired. *See Roberts*, 319 F.3d at 694-95. Because it appears that Texas law would have permitted Mark to file a PDR after the Court of Appeals granted his motion to dismiss his appeal, his "process of direct review" did not "come to an end" until the end of the 30-day filing period. *Jimenez*, 129 S. Ct. at 685 (alterations and internal quotation marks omitted). Thus, under AEDPA, his state conviction did not become final until 30 days after the Court of Appeals dismissed his appeal.

This date of finality renders Mark's habeas petition timely. Mark's conviction became final on March 25, 2005—30 days after the Court of Appeals dismissed his appeal on February 22, 2005. Mark's properly filed state habeas petition—which was filed on February 21, 2006 and denied on April 9, 2006—tolled AEDPA's one-year statute of limitations during the 48 days it was pending. *See* 28 U.S.C. § 2244(d)(2). As such, Mark had until May 12, 2006 to

file his federal habeas petition.  Therefore, his federal petition, filed on May 4, 2006, was timely.  Accordingly, we reverse the judgment of the district court dismissing Mark's petition as time-barred, and remand for further consideration of his petition.

REVERSED and REMANDED.

GARWOOD, Circuit Judge, dissenting.

I respectfully dissent. In my view, the direct appeal of Mark's state conviction terminated not later than February 22, 2005, when Mark's appeal was dismissed by the Texas Court of Appeals pursuant to Mark's voluntary motion to dismiss his appeal.[1]

I would apply the general rule long recognized in this and most other circuits that when a party, after giving timely notice of appeal, has his appeal dismissed on his own motion, he is thereby "placed in the same position as if [he] had never filed a notice of appeal in the first place." *Williams v. United States*, 553 F.2d 420, 422 (5th Cir. 1977). *See also, e.g., Barrow v. Falk*, 977 F.2d 1100, 1103 (7th Cir. 1992) ("A notice of appeal filed and dismissed voluntarily is gone, no more effective in conferring jurisdiction on a court than a notice never filed," citing *Williams*); *Futernick v. Sumpter*, 207 F.3d 305, 312 (6th Cir. 2000) (quoting with approval above quoted passage from *Barrow*). To the same effect is *United States v. Arevalo*, 408 F.3d 1233, 1236 (9th Cir. 2005). *See also United States v. Outen*, 286 F.3d 622, 631 & n.5 (2d Cir. 2002) ("A withdrawal of an appeal . . . brings the appeal to an end," quoting with approval the above quoted language from *Barrow*). Relying on the foregoing authorities, the Third Circuit recently held that a COA was not justified to challenge the district court's holding that the appellant's section 2255 challenge was barred because filed more than one year after "his direct appeal was voluntarily dismissed" with the result that "further direct review is no longer possible." *United States v.*

---

[1] Mark's lawyer mailed the motion to withdraw the appeal and for voluntary dismissal to the court of appeals (with a copy to the State's attorney) on February 3, 2005. The motion was signed by Mark individually, as well as by his counsel. The court of appeals received the motion on February 8, 2005, and issued an opinion granting appellant's motion to withdraw the appeal and dismissing the appeal on February 22, 2005, and on the same day the mandate of the court of appeals signed by its deputy clerk was issued allowing appellant to withdraw his appeal and dismissing the appeal and certifying that decision for observance, the mandate being mailed on the same day, February 22, 2005, by the clerk of the court of appeals to the district court judge, the district court clerk, the attorney for appellant and the State's attorney.

*Sylvester*, 258 Fed. App. 411, 2007 WL 4395652 (3d Cir., Dec. 14, 2007).[2]  *See also Brown v. Quarterman*, 2007 WL 949800 (N.D. Tx. 2007), at n.1 ("Where a habeas petitioner appeals his conviction but later dismisses the appeal, nearly every federal court to address the issue has held that the judgment becomes final for limitations purposes on the date the appeal is dismissed"); *United States v. Martin*, 2008 WL 421153 (N.D. Tx. 2008) (holding that the section 2255 petitioner's "voluntary dismissal of her appeal is the date of finality of her judgment for purposes of" the one year limitation period).  And, in *United States v. Solis-Gonzalez*, 254 F.3d 1080 (table), 201 WL 563745 (5th Cir. 2001, unpub.), we affirmed the district court's dismissal of the section 2255 petition as being time barred, noting that the appellant had not properly briefed his arguments that the petition was timely, but we went on to state: "Even if we were to consider the timeliness of appellant's petition, he would have difficulty persuading us that, although he voluntarily dismissed his appeal, the one-year period should be extended by the time limit for filing a petition for certiorari." *Id.* n1.

It is recognized that an exception to the above rule applies where a timely motion to reinstate the appeal or set aside the dismissal thereof is filed on the basis that the appellant's motion to dismiss the appeal was involuntary, or based on ineffective assistance of counsel , or made without consent of the appellant. *See Futernick* at 312.  An example of this is presented by *Latham v. United States*, 527 F.3d 561 (7th Cir. 2008).

That character of exception should not apply here.  First, at no time has Mark ever sought to challenge the voluntariness or propriety of his motion to dismiss the appeal (or the propriety of the dismissal itself) either in the state court system or in his instant 2254 proceeding (or otherwise).  Second, as the

---

[2] There are § 2255 cases.  However, we apply the same principles to § 2255(f) cases as to § 2241(d) cases.  *See United States v. Plascencia*, 537 F.3d 385, 388 (5th Cir. 2008).

Court pointed out in *Jimenez v. Quarterman,* 129 S.Ct. 681, 686 n.4 (2009), it continues to adhere to the rule "that the possibility that a state court may reopen direct review 'does not render convictions and sentences that are no longer subject to direct review nonfinal'" (quoting *Beard v. Banks*, 124 S.Ct. 2504, 2510-11 (2004)). As stated in that footnote, *Jimenez* "merely hold[s] that, where a state court has in fact reopened direct review, the conviction is rendered nonfinal for purposes of § 2244(d)(1)(A) during the pendency of the reopened appeal."

We have applied essentially the same principle in a variety of contexts. In *United States v. Plascencia*, 537 F.3d 385 (5th Cir. 2008), we addressed a situation in which notice of appeal from Plascencia's challenged conviction was due to be filed by January 12, 2004. Notice of appeal was filed on January 15, 2004, but within the time allowed by FED. R. APP. P. 4(b)(4), and we construed the notice of appeal as a timely motion to extend the time for filing notice of appeal where good cause or excusable neglect is shown for failure to timely file the notice of appeal. The trial court ultimately held, after remand by this court, that there was no good cause or excusable neglect, and we affirmed that holding on June 9, 2004. Plascencia's section 2255 motion was filed June 15, 2005. The district court dismissed it, holding that it was filed more than a year after the underlying conviction became final in January 12, 2004, when the time for filing notice of appeal expired without any notice having been given. Plascencia contended, however, that his conviction did not become final until September 2004, when the 90 days period for seeking certiorari from our June 9, 2004 order affirming the trial court's holding denying Plascencia's January 15, 2004 "motion" expired. We rejected his contention and held that the underlying conviction became final on January 12, 2004, when the time for filing notice of appeal expired without any such notice having been filed. *Id*. at 390.    To the same effect as *Plascencia* is *Randle v. Crawford*, 578 F.3d 1177, 1183-85 (9th Cir. 2009), holding the challenged state conviction became final when the time

for filing notice of appeal from the convicting Nevada trial court expired without such a notice being filed and not on the later date when the Nevada Supreme Court dismissed the appeal as being untimely. Other similar cases are *United States v. Prows*, 448 F.3d 1223, 1227-28 (10th Cir. 2006); *Moshier v. United States,* 402 F.3d 116, 118 (2d Cir. 2005); *Kaspral v. United States*, 166 F.3d 565, 577 (3d Cir. 1999).

The majority's opinion here is in conflict with *Plascencia* and contrary to the admonition in *Jimenez's* footnote 4.[3]

The majority holds that Mark's conviction did not become final until 30 days after the Court of Appeals granted his motion to withdraw his appeal on February 22, 2005, and dismissed the appeal, because within that 30 days he could have sought discretionary review in the Court of Criminal Appeals of that decision of the Court of Appeals. However, there is nothing to indicate that any such review would include anything whatever related to the underlying conviction, and would not rather simply review whether the appeal should be reinstated.[4] As we said in *Plascenscia* rejecting the contention that the there challenged federal conviction did not become final until the expiration of 90 days in which certiorari could be sought from our dismissal of the appeal as untimely and rejecting the timely filed FED. R. APP. P. 4(b)(4) motion for extension of time

---

[3] I also note the Supreme Court's June 13, 2011 grant of certiorari (*Gonzalez v. Thaler*, 79 U.S.L.W. 3696 (U.S. 2011)) in *Gonzalez v. Thaler*, 623 F.3d 222 (5th Cir. 2010), presenting the issue, *inter alia*, of whether for purposes of § 2244(d)(1)(A), the challenged state conviction became final on the expiration of time for filing a petition for discretionary review with the Texas Court of Criminal Appeals respecting the Texas Court of Appeals's affirmance of the challenged conviction or on the subsequent issuance of the mandate by the Texas Court of Appeals.

[4] Absolutely no authority is cited concerning or involving *any* Court of Criminal Appeals direct review of a Texas Court of Appeals order granting a written motion to dismiss a criminal appeal signed by appellant and counsel and served on the state, or any other such motion.

in which to file notice of appeal, "seeking certiorari review of the denial of such a motion is not the same as seeking review of an adjudication of the merits of Plascencia's direct criminal appeal." *Plascencia* at 389 n. 17. This, of course, is what the *Jimenez* footnote 4 is saying, namely "the possibility that a state court may reopen direct review 'does not render convictions and sentences that are no longer subject to direct review nonfinal.'" *If* direct review *is* reopened, then the conviction is *not* final until it is otherwise concluded. The mere possibility that direct review *might* be reopened, all that is present here or was present in *Plascencia*, does not suffice.[5]

---

[5] To the extent that *Latham* may suggest otherwise, it is contrary to *Plascencia*.